*228 CORRIGAN, J.
In this criminal case, we consider the joinder and severance of charges against a single criminal defendant under our court rules. MCR 6.120(A) and (B) establish when a court may join offenses charged in two or more informations against a single defendant and when a court must sever offenses charged in a single information against a single defendant. This Court first adopted MCR 6.120 on October 1, 1989. Before adopting MCR 6.120, however, we had ruled 12 years earlier that two drug sales to the same undercover agent within 12 days could not be joined because “[t]he two informations charged distinct and separate offenses, and [the defendant] was entitled to a separate trial on each offense.” People v Tobey, 401 Mich 141, 145; 257 NW2d 537 (1977).
We conclude that the provisions of MCR 6.120 superseded Tobey. The unambiguous language of MCR 6.120 permits joinder in a greater range of circumstances than did Tobey. In this case, the trial court correctly applied the plain language of the court rule when it determined that defendant’s offenses were “related.” Accordingly, we affirm defendant’s convictions.
I. FACTS AND PROCEDURAL HISTORY
The Court of Appeals summarized the facts of this case as follows:
Officers from the Oakland County Narcotics Enforcement Team executed a search warrant at a Motel 6 motel room on November 4, 2004. They knocked and announced their presence, and they forced the door open when they received no response. As they entered, defendant, the sole occupant, was just walking out of the bathroom and the toilet was in mid-flush. A bag of suspected crack cocaine was caught in the drain and an officer fished it out. Another officer broke the toilet bowl and recovered one or more small rocks. In the room itself, the officers found *229 some large chunks of suspected crack cocaine, several small rocks in individual “corner ties,” a digital scale, a box of razor blades, a container of sandwich baggies, some individual baggies with missing corners, a pair of scissors, two handguns and ammunition, over $500 in cash, and a receipt showing that the room had been rented to defendant. The suspected narcotics weighed at least 50 grams and tested positive for cocaine.
Pontiac police officers testified that they executed another search warrant at 510 Nevada on February 2, 2005. The officers saw defendant arrive in a 1994 Ford and enter the house shortly before the warrant was executed. The officers again knocked and announced their presence, then forced the door open when they received no response. Defendant and another person were in the living room. Defendant was seated in a chair with a brown bag in his lap. He was leaning down with his right hand extended toward the floor between the chair and the television set. He ignored orders to raise his hands. On the floor where defendant had been reaching, the officers found a plastic bag containing approximately 18 rocks of suspected cocaine. The bag in defendant’s lap contained sandwich baggies and a pair of scissors. A digital scale and a box of sandwich baggies were on top of the television, along with a set of keys that included a key to the 1994 Ford. Both inside the back of the television and on the floor behind it were empty baggies and used “corner ties” with cocaine residue. Defendant had over $1,000 in his wallet. Inside the trunk of the 1994 Ford, the officers found a handgun and two assault rifles. The suspected narcotics weighed just under ten grams and tested positive for cocaine.[1]
The prosecutor moved under MCR 6.120(A) and (B) to consolidate for a single jury trial the offenses charged as a result of defendant’s November 4, 2004, and February 2, 2005, arrests. In the alternative, the prosecutor moved to introduce evidence of each offense in *230 the other trial under MRE 404(b). Defendant objected to both motions. The trial court granted the prosecutor’s motion for joinder, holding that the offenses were “related” under MCR 6.120(B) because “[b]oth of the acts that are involved here do appear to the Court to be parts of a single scheme or plan; namely, drug trafficking and therefore they would appear to be related offenses.” The trial court further explained that “[t]he Court is concerned about the potential for prejudice, but the Court believes there actually is a greater risk of prejudice if we had separate trials and the Court would allow 404(b) even to be used in the form of the conduct of the offense that is not the subject of a particular trial.”
With regard to the charges stemming from the November 2004 arrest, the jury convicted defendant of possession with intent to deliver 50 grams or more, but less than 450 grams, of cocaine, MCL 333.7401(2)(a)(iii), being a felon in possession of a firearm, MCL 750.224f, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. With regard to the February 2005 arrest, the jury convicted him of possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(ic), being a felon in possession of a firearm, carrying a concealed weapon in a vehicle, MCL 750.227(1), and one count of felony-firearm.
In an unpublished opinion per curiam, the Court of Appeals affirmed. It held that the trial court did not err by concluding that the offenses were “related” under MCR 6.120(B). The Court explained:
The offenses here were not discrete, unrelated sales. Rather, they indicated a single scheme or plan to earn money by selling cocaine. In both, defendant was found in possession of enough cocaine to indicate an intent to sell it, as well as the necessary equipment to prepare it for sale and weaponry to defend the operation. The evidence there *231 fore indicated that both of defendant’s offenses were connected parts of an ongoing scheme or plan to sell drugs.[2]
Defendant then applied for leave to appeal in this Court. We granted his application for leave and directed the parties to address “(1) whether the defendant was entitled to separate trials under MCR 6.120; (2) whether People v Tobey, 401 Mich 141 (1977), is consistent with MCR 6.120; and (3) if the joinder was erroneous, whether the error may be deemed harmless.”[3]
II. STANDARD OF REVIEW
Generally, this Court reviews questions of law de novo and factual findings for clear error. People v McRae, 469 Mich 704, 710; 678 NW2d 425 (2004); MCR 2.613(C). The interpretation of a court rule, like matters of statutory interpretation, is a question of law that we review de novo. People v Petit, 466 Mich 624, 627; 648 NW2d 193 (2002). To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute “related” offenses for which joinder is appropriate. Because this case presents a mixed question of fact and law, it is subject to both a clear error and a de novo standard of review.
Additionally, when this Court reviews preserved nonconstitutional errors, we consider the nature of the error and assess its effect in light of the weight and strength of the untainted evidence. MCL 769.26; People v Lukity, 460 Mich 484, 495; 596 NW2d 607 (1999). Similarly, MCR 2.613(A) provides that
[a]n error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything *232 done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.
We recognize that both the statute and the court rule present “different articulations of the same idea.” People v Robinson, 386 Mich 551, 562; 194 NW2d 709 (1972).
III. ANALYSIS
The same legal principles that govern the construction and application of statutes apply to court rules. In re KH, 469 Mich 621, 628; 677 NW2d 800 (2004). When construing a court rule, we begin with its plain language; when that language is unambiguous, we must enforce the meaning expressed, without further judicial construction or interpretation. Id.
Defendant alleges that the trial court violated MCR 6.120. Defendant argues that his offenses do not constitute either “the same conduct” or “a series of connected acts or acts constituting part of a single scheme or plan” as the Tobey Court defined those terms. Defendant further contends that his interpretation of the court rule is consistent with a Court of Appeals decision in which the Court applied Tobey’s, definitions of the relevant terms.[4] Because the offenses charged were “unrelated,” defendant claims that he had an absolute right to severance upon his objection to the prosecutor’s motion to consolidate under MCR 6.120(B).
*233 At the time of defendant’s trial, MCR 6.120(A) and (B) provided in relevant part:[5]
(A) Permissive Joinder. An information or indictment may charge a single defendant with any two or more offenses. Each offense must be stated in a separate count. Two or more informations or indictments against a single defendant may be consolidated for a single trial.
(B) Right of Severance; Unrelated Offenses. On the defendant’s motion, the court must sever unrelated offenses for separate trials. For purposes of this rule, two offenses are related if they are based on
(1) the same conduct, or
(2) a series of connected acts or acts constituting part of a single scheme or plan.
The plain language of MCR 6.120 permits joinder if offenses are “related.” Offenses are “related” if they comprise either “the same conduct” or “a series of connected acts or acts constituting part of a single scheme or plan.” MCR 6.120(B)(1) and (2). Accordingly, the court rule then in effect unambiguously provided three potential bases on which joinder is permissible.
In this case, the record reflects that the trial court correctly applied the plain language of MCR 6.120 to the facts presented when it concluded that the offenses *234 charged were “related.” After hearing arguments from the parties, the trial court specifically addressed the language of MCE 6.120(A) and (B). The court concluded that the offenses charged in both cases reflect defendant’s “single scheme or plan” of drug trafficking. MCR 6.120(B)(2). Consequently, defendant had no right to sever these “related” offenses. MCR 6.120(B).[6] The trial court noted that in light of the relevant facts, a single jury trial was appropriate and, further, the court stated that it would “be cautioning the jury that they need to find that both events have to meet the standard of proof beyond a reasonable doubt.”
We conclude that the trial court did not violate the unambiguous language of MCR 6.120. The offenses charged were plainly “related” under MCR 6.120(B)(2). In both cases, defendant was engaged in a scheme to break down cocaine and package it for distribution. Evidence of acts constituting part of defendant’s single scheme was found in both the motel room and the house at 510 Nevada. Even if one views defendant’s first arrest in November and his second arrest in February as discrete moments in time, direct evidence indicated that he was engaging in the same particular conduct on *235 those dates.[7] The charges stemming from both arrests were not “related” simply because they were “of the same or similar character.”[8] Instead, the offenses charged were related because the evidence indicated that defendant engaged in ongoing acts constituting parts of his overall scheme or plan to package cocaine for distribution.[9] Accordingly, the trial court complied with what the language of MCR 6.120 unambiguously required.[10]
Our interpretation of MCR 6.120 is reinforced by the analysis of the United States Court of Appeals for the Sixth Circuit in several cases addressing the analogous *236 federal rules.[11] In United States v Saadey, 393 F3d 669 (CA 6, 2005), the court held that joinder of counts for filing false tax returns with counts for filing false credit applications against the defendant was appropriate “[b]ecause the credit application counts contained financial figures that were materially different from those reported on his tax returns ...Id. at 678. The court concluded that the multiple counts revealed “a common scheme to defraud.” Id. A second case involved a defendant charged with conspiracy to commit violent acts against the United States and its officers, in which the court had joined the defendant’s drug-related and firearms-related counts. United States v Graham, 275 F3d 490 (CA 6, 2001).[12] The district court ruled that, *237 based on the grand jury’s indictment, the conspiracy to manufacture marijuana was part of “a common scheme or plan” to sell drugs to finance violence. Graham, supra at 512. On appeal, the court agreed that joinder of the counts was proper, reaffirming the well-established principle that “ ‘[w]hen the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate.’ ” Id., quoting United States v Wirsing, 719 F2d 859, 863 (CA 6, 1983). Similarly, in United States v Jacobs, 244 F3d 503, 507 (CA 6, 2001), the court held that the district court had not abused its discretion by denying the motion to sever charges arising from two separate incidents in which the defendant abducted his estranged wife. The court distinguished the defendant’s appeal from another case “[b]e-cause, as the district court properly concluded, both abductions were part of a common scheme, the counts in the indictment are factually intertwined. .. .” Id. The court concluded, “Here, even if the charges were tried separately, evidence from each crime would have been admissible in the trial of the other because of the common scheme or plan.” Id. The admissibility of evidence in other trials is an important consideration because “[j]oinder of... other crimes cannot prejudice the defendant more than he would have been by the admissibility of the other evidence in a separate trial.” United States v Harris, 635 F2d 526, 527 (CA 6, 1980).
*238 Having determined that defendant was not entitled to separate trials under MCR 6.120, we next consider whether Tobey is consistent with MCR 6.120.[13] Tobey, which predated the enactment of MCR 6.120 by approximately 12 years, also analyzed the permissible circumstances for joinder. However, the Tobey Court took a much narrower view of the circumstances in which joinder may be appropriate than that set forth in MCR 6.120. This narrower view of Tobey can be seen when one compares Tobey’s original analysis of the defendant’s conduct with the language later enacted in MCR 6.120.[14] Because the differences between Tobey and MCR 6.120 cannot be reconciled without undermining the plain language of the court rule, we conclude that MCR 6.120 superseded Tobey. Consequently, courts should no longer view Tobey as dispositive on issues of joinder and severance.[15] Consistent with our decision, *239 we also reject the analysis of Daughenbaugh in accordance with the plain language of MCR 6.120.[16]
In Tobey, the Court concluded that charges arising from two drug sales to the same undercover agent within 12 days were improperly joined because “[t]he two informations charged distinct and separate offenses, and Tobey was entitled to a separate trial on each offense.” Tobey, supra at 145. Because MCR 6.120 did not yet exist, the Tobey Court’s discussion of permissible circumstances for joinder relied on three primary sources. First, the Court quoted its earlier opinion in People v Johns, 336 Mich 617; 59 NW2d 20 (1953), which had noted that “ ‘this Court has emphasized that the offenses charged in the several counts must arise *240 out of substantially the same acts committed at the same time.’ ” Tobey, supra at 148-149, quoting Johns, supra at 623 (emphasis in Tobey). Second, the Court relied on Blockburger v United States, 284 US 299, 301-302; 52 S Ct 180; 76 L Ed 306 (1932), to support its conclusion that, for double jeopardy and joinder purposes, it would be inappropriate for consecutive sales of heroin made to the same person on different days to constitute one offense. Tobey, supra af 149-150. Third, the Tobey Court discussed the American Bar Association (ABA) Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance (Approved Draft, 1968). Id. at 150-153.
None of the sources discussed in Tobey can be reconciled with the unambiguous language of MCR 6.120. First, Tobey relied on Johns for the proposition that “the offenses charged in the several counts must arise out of substantially the same acts committed at the same time.” Tobey, supra at 149 (quotation marks and citation omitted; emphasis in original).[17] Yet, Johns did not conclude that offenses must be “committed at the same time” in order for joinder to be appropriate. Instead, the Court described the general principle that
*241 where the several offenses charged, though distinct in point of law, yet spring out of substantially the same transaction, or are so connected in their facts as to make substantially parts of the same transaction, or connected series of facts, the defendant can not be prejudiced in his defense by the joinder, and the court will neither quash nor compel an election. [Johns, supra at 623.]
Moreover, the unambiguous language of MCR 6.120 does not mandate the existence of temporal proximity between several offenses.[18] Instead, MCR 6.120(B)(2) permits joinder of offenses that were not committed at the same time but nevertheless constitute “a series of connected acts or acts constituting part of a single scheme or plan.”
Tobey’s reliance on Blockburger “for double jeopardy and joinder purposes” is similarly unavailing. Generally, joinder is a “discrete, nonconstitutional concept[] that should not be conflated with the constitutional double jeopardy protection.” People v Nutt, 469 Mich 565, 592 n 28; 677 NW2d 1 (2004). In Tobey, however, the Court reasoned that, “[f]or double jeopardy and joinder purposes each sale is separate conduct, a separate act and transaction, and, as the Court of Appeals correctly noted, a separate and distinct criminal offense.” Tobey, supra at 149. Additionally, Tobey quoted extensively from Blockburger to buttress its conclusion that “[wjhile Tobey’s conduct in selling heroin on different days to the same person is substantially similar conduct, it is not the same conduct or act.” Id. In so doing, Tobey conflated the constitutional double jeopardy protection with the nonconstitutional concept of joinder. Consequently, we find Tobey’s discussion of Blockburger unpersuasive.
*242 Tobey’s discussion of the draft ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance (Approved Draft, 1968), refers to an earlier version. Soon after the Court decided Tobey, the ABA published revised standards.[19] These revised standards endeavored to “incorporate and extend the approach of the original standards.”[20] Unlike the draft version on which Tobey relied, the revised ABA standards first introduced the concept of “related” and “unrelated” offenses.[21] When the Court adopted MCR 6.120 in 1989, it also used the framework of “related” and “unrelated” offenses. In contrast, To-bey made no mention of “related” or “unrelated” offenses. Instead, Tobey emphasized that the draft version permitted “joinder of offenses which ‘are of the same or similar character’, or which ‘are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan’.”[22] Both the revised standards and MCR 6.120, however, omitted any suggestion that offenses should be “of the same or similar character,” as the draft ABA version had provided.[23] The incongruities between the draft ABA ver *243 sion on which Tobey relied and the plain language of MCR 6.120 reinforce our conclusion that MCR 6.120 superseded Tobey.
Finally, we conclude that even if defendant successfully had established that the trial court erred by joining his two cases, any error would be harmless. Under MCL 769.26, a preserved, nonconstitutional error is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative. Lukity, supra at 495-496. Similarly, MCR 2.613(A) provides that an error is not grounds for disturbing a judgment “unless refusal to take this action appears to the court inconsistent with substantial justice.”
In this case, the evidence of each charged offense could have been introduced in the other trial under MRE 404(b).[24] See, e.g., People v Sabin (After Remand), 463 Mich 43, 63-65; 614 NW2d 888 (2000).[25] Indeed, the prosecutor moved to allow MRE 404(b) evidence as an *244 alternative to its motion to consolidate.[26] The trial court concluded that defendant would suffer greater prejudice if the court allowed evidence of the charged offenses in two separate trials under MRE 404(b) than if the court permitted joinder. Moreover, the trial court instructed the jury that it “must consider each crime separately in light of all of the evidence in this case” and further that it “may find the defendant guilty of all or any combination of these crimes or not guilty.”
We note that, besides being consistent with this Court’s caselaw, the trial court’s conclusion is also consistent with that of the District of Columbia Court of Appeals, which has stated that “a misjoinder may be deemed harmless only if all or substantially all of the evidence of one offense would be admissible in a separate trial of the other.” Byrd v United States, 551 A2d 96, 99 (DC, 1988) (citation and quotation marks omitted).[27] The United States Supreme Court also has *245 stated, “[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial.” United States v Lane, 474 US 438, 446, n 8; 106 S Ct 725; 88 L Ed 2d 814 (1986).
Therefore, even if the trial court had erred by joining the charges, we cannot conclude that such an error was outcome determinative.[28]
IV FURTHER RESPONSE TO CHIEF JUSTICE KELLY’S DISSENT
Chief Justice Kelly asserts that we have “implicitly” incorporated “same or similar character” language into MCR 6.120 “by denying severance of offenses that are of the same or similar character under the misnomer of a single scheme or plan.” Post at 264. Not only does Chief Justice Kelly fail to adequately explain how we have implicitly read language into the court rule, she *246 also ignores our explicit statement concerning “same or similar character” offenses. See supra at 235. Moreover, the plain language of MCR 6.120 does not permit the joinder of those offenses that are only “of the same or similar character.” Accordingly, we reject Chief Justice Kelly’s assertion. Our analysis begins with the plain language of the court rule and enforces the meaning expressed, without further judicial construction or interpretation. See In re KH, supra at 628.
Chief Justice KELLY contends that “[ojther jurisdictions with similar court rules have correctly rejected” interpretations consistent with our interpretation of “single scheme or plan.” Post at 261-262 n 25. She further argues that many jurisdictions “consider a finding of a common motive or goal to be a precondition for establishing a single or common scheme or plan under the joinder and severance rules.” Post at 262 n 25. In so doing, Chief Justice KELLY again presupposes that defendant’s actions do not reflect a common motive or particular goal each time that he was observed packaging cocaine for distribution. To buttress her argument, Chief Justice KELLY cites three cases that do not advance her position.
In State v Denton, 149 SW3d 1 (Tenn, 2004), for example, the Tennessee Supreme Court explained the unique rubric developed through that state’s court rules and caselaw to address joinder and severance issues. See Denton, supra at 12-13. Although Chief Justice KELLY acknowledges that Tenn R Crim P 14(b)(1) and MCR 6.120 differ, she asserts that any differences between the two rules are irrelevant because Denton “interpreted the common scheme or plan clause, not the evidentiary admissibility question.” Post at 262 n 25. We reject Chief Justice KELLY’s flawed assertion that the common scheme or plan clause can be *247 isolated from the evidentiary admissibility clause because the clauses are compound propositions. Under Tenn R Crim P 14(b)(1), a defendant has the right to severance unless the offenses charged are “part of a common scheme or plan and the evidence of one would be admissible in the trial of the others.” Indeed, this latter conjunctive requirement, which is entirely absent in MCR 6.120, functions as the primary inquiry in Tennessee.[29] The Tennessee Supreme Court thus explained that, “in addition to showing that the offenses are part of a common scheme or plan, there is also a question of evidentiary admissibility that must be addressed.” Denton, supra at 13.[30] Because of these differences, we question how much value, if any, should be assigned to Chief Justice Kelly’s repeated invocation of Denton and Tenn R Crim P 14(b)(1) throughout her dissent.
Additionally, in State v McCrary, 621 SW2d 266 (Mo, 1981), the Missouri Supreme Court found no abuse of discretion in the trial court’s refusal to sever the offenses charged against the defendant when the offenses revealed “ample evidence of the existence of a plan of harassment and revenge aimed at the [defendant’s former partner and her new] family.” McCrary, supra at 271-272. The Missouri Supreme Court thus *248 upheld the joinder of offenses against the defendant for three discrete occurrences, including carrying a concealed weapon on March 12, 1978, an assault on November 16, 1978, and a firebombing on March 8, 1979. Id. at 271.
Similarly, in State v Oetken, 613 NW2d 679, 688 (Iowa, 2000), the defendant argued that his trial counsel was ineffective because his attorney did not move to sever two burglary charges that defendant asserted were not part of “common scheme or plan.” The Iowa Supreme Court disagreed, concluding that sufficient evidence supported the existence of a common scheme or plan, where the defendant “traveled through the rural countryside in search of homes that were unoccupied during traditional work hours, he knocked to ascertain the abodes were indeed vacant, broke and entered the premises through the rear doors, and proceeded to steal small portable objects such as TVs, VCRs, and guns.” Id. at 699. The Iowa Supreme Court has affirmed its interpretation of what constitutes a “common scheme or plan” in more recent decisions as well.[31] Indeed, the analysis in these cases does not justify Chief Justice Kelly’s reliance on them.
Moreover, several recent decisions reflect that other jurisdictions with similar court rules have adopted interpretations consistent with ours. The Mississippi Supreme Court has held that a “common scheme or plan” existed when the defendant was charged with three counts of forging prescriptions involving two different pharmacists over a five month period. See *249 Rushing v State, 911 So 2d 526, 536 (Miss, 2005) (“Succinctly stated, these counts involve too many similar factors when viewed together, to be anything but clearly linked and part of the same common scheme or plan.”)- Similarly, the Wyoming Supreme Court has held that the trial court did not abuse its discretion in refusing to sever a first-degree attempted sexual assault charge from attempted first-degree sexual assault charges involving a different victim. Lessard v State, 158 P3d 698, 704 (Wy, 2007). The court reasoned that the charged offenses constituted parts of a “single scheme or plan” even though “the criminal acts occurred at different locations and against different victims ....” Id. The Vermont Supreme Court also rejected the argument that because the charged offenses were separated in time, they cannot constitute a “common plan or scheme,” explaining that “there is no hard-and-fast rule regarding time limits, and... the necessary proximity must vary with the circumstances.” State v Willis, 181 Vt 170, 181; 915 A 2d 208 (2006) (citation and quotation marks omitted). Moreover, the Massachusetts Supreme Court affirmed a trial court decision to join four counts of aggravated rape and murder, stating that “the evidence supported a finding of ‘a common plan by the defendant to prey upon similarly situated cocaine-addicted women for sexual gratification ....’” Commonwealth v Gaynor, 443 Mass 245, 259-260; 820 NE2d 233 (2005). In light of these decisions, we reject the view that our interpretation of the court rule somehow deviates from the interpretation of other jurisdictions concerning analogous rules.
V CONCLUSION
The trial court correctly applied the unambiguous language of MCR 6.120(A) and (B) in determining that *250 the offenses in this case were “related” and consequently that joinder was appropriate. We further conclude that MCR 6.120 superseded the Court’s earlier decision in Tobey and, therefore, courts should no longer view Tobey as dispositive regarding issues of joinder and severance against a single criminad defendant. Instead, courts must give effect to the plain language of the court rule. Accordingly, we affirm defendant’s convictions.
Weaver (except for part IV), Young, and Markman, JJ., concurred with CORRIGAN, J.
WEAVER, J. (concurring). I concur in all except part IV of Justice Corrigan’s opinion.

 People v Williams, unpublished opinion per curiam of the Court of Appeals, issued October 25, 2007 (Docket No. 266807), at 1-2.

 Williams, supra at 2.

 People v Williams, 481 Mich 884 (2008).

 People v Daughenbaugh, 193 Mich App 506; 484 NW2d 690 (1992), mod in part and Iv den in part 441 Mich 867 (1992).

 The Court amended MCR 6.120 effective January 1, 2006. Currently, MCR 6.120(B)(1) states that:
(1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on
(a) the same conduct or transaction, or
(b) a series of connected acts, or
(c) a series of acts constituting parts of a single scheme or plan.
Because the trial court decided this issue before January 1, 2006, under the former rule, we analyze this case with the rule then in effect.

 The dissent argues that MCE 6.120(B) “is mandatory and requires that unrelated offenses be severed upon a timely motion to sever.” Post at 268 n 37. We agree that if the offenses charged were “unrelated,” defendant would have a right to severance under MCR 6.120(B). In this case, however, the record reveals that the trial court analyzed the relevant facts and concluded that the charged offenses were “related”; therefore, defendant had no right to severance. Generally, a trial court’s “ultimate ruling on a motion to sever is reviewed for an abuse of discretion.” People v Girard, 269 Mich App 16, 17; 709 NW2d 229 (2006). Because the dissent cites no caselaw and advances no cogent argument to support its underlying assumption that the trial court abused its discretion, the dissent’s repeated insistence that severance is mandatory for “unrelated” offenses is unavailing.

 Likening us to a magician, the dissent contends that our statement is “a semantic sleight of hand.” Post at 258. Although we conclude that defendant’s charged offenses constitute “part of a single scheme or plan” under MCR 6.120(B)(2), we nevertheless note that discussion of whether the charged offenses involved “the same conduct” is also relevant for a reviewing court to consider because it reflects an alternative definition of “related offenses” under MCR 6.120(B)(1).

 See 2 ABA Standards for Criminal Justice (2d ed), ch 13, p 11 (“Offenses committed at different times and places are not ‘related’ merely because they are of the same or similar character.”).

 The dissent complains that “[n]othing in the record supports or even suggests that defendant’s two arrests were anything more than two discrete occurrences of packaging illegal drugs.” Post at 258 n 17. The dissent’s concession that defendant’s actions constituted two “occurrences of packaging illegal drugs” provides additional support for our conclusion that defendant’s acts constituted parts of his scheme or plan to package cocaine for distribution.

 Although the trial court complied with the unambiguous language of MCR 6.120, the Court of Appeals construed the court rule too broadly. In our judgment, joinder may not be permitted if a reviewing court concludes that the only link to an ongoing scheme or plan is “to earn money” through some criminal enterprise. Williams, supra at 2. Moreover, in light of the myriad evidence indicating that defendant was engaged in an ongoing scheme or plan to package cocaine for distribution, whether his underlying motive was to earn money is immaterial.

 FR Crim P 8(a) provides that two or more offenses may be charged in the same indictment “if the offenses charged... are of the same or similar character or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.”
FR Crim P 14(a) states that severance is proper if joinder of offenses would prejudice the defendant:
If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants’ trials, or provide any other relief that justice requires.

 The dissent asserts that in Graham, supra, the court based its holding “on the motive underlying the defendant’s perpetration of each offense ....” Post at 260. Moreover, the dissent contends that “the cases cited by the lead opinion all involve situations in which each joined offense was committed with a particular motive or goal underlying the defendant’s conduct.” Post at 261. In so doing, the dissent fails to explain why defendant’s actions here do not reflect an underlying motive or particular goal each time that he was observed packaging cocaine for distribution. Indeed, in the seminal case used in LaFave, Criminal Procedure (3d ed), § 17.1(a), to illustrate the “common scheme or plan” aspect of the federal rule, the court held “that charges of bribery, tax evasion, and mail fraud were properly joined because they all were instances of the defendant using his public office for personal gain.” Id. at 4, citing United States v Barrett, 505 F2d 1091 (CA 7, 1974); see also *237 United States v Fortenberry, 914 F2d 671 (CA 5, 1990) (holding that car bombing and weapons charges were properly joined where all charges allegedly arose from defendant’s attempt to exact revenge on persons involved in his divorce). Therefore, although the dissent attempts to distinguish cases in which the court permitted joinder of those offenses committed with the same motive, we conclude that the broad acceptance of a variety of underlying motives by our sister courts provides yet another basis to conclude that the charged offenses in this case were properly joined.

 The dissent asserts that our decision is inherently flawed because we have adopted “cart-before-the-horse reasoning” by analyzing whether defendant was entitled to separate trials before analyzing whether Tobey is consistent with MCR 6.120. Post at 251. In so doing, the dissent fails to mention that we have analyzed the issues before us in the same sequence set forth in our order granting defendant’s application for leave and in the same sequence that the parties themselves addressed the issues. See Williams, supra 481 Mich at 884.

 Compare MCR 6.120(B)(2) (“a series of connected acts or acts constituting part of a single scheme”) with Tobey, supra at 153 (“The undercover police agent testified that he never gave Tobey his telephone number or address .... The officer stated that he ‘always called down’ any time he wished to see Tobey to make a purchase, and responded affirmatively to the question whether the sales and purchases were ‘always initiated’ by him.”). Notably, the unambiguous language of MCR 6.120 does not require that a reviewing court consider the factors that the Tobey Court apparently found dispositive, including whether the undercover agent had always initiated the drug sales or whether the defendant had some means to locate the undercover agent.

 The staff comment to MCR 6.120 states that “[e]laboration on this standard may be found in People v Tobey, 401 Mich 141 (1977).” The staff comment erroneously implied that Tobey is entirely consistent with the *239 unambiguous language of MCR 6.120. Moreover, a staff comment to the Michigan Court Rules is not binding authority. People v Grove, 455 Mich 439, 456; 566 NW2d 547 (1997). Because the staff comment should not be considered an authoritative construction of MCR 6.120, we only address the unambiguous language of the court rule and this Court’s prior decision in Tobey. See MCR 1.101. Consequently, the dissent’s reliance on the staff comment to buttress its argument that “Tobey is virtually identical to the language in MCR 6.120 and is in no way inconsistent” is misplaced. Post at 256.

 As we have discussed, MCR 6.120 superseded Tobey because the unambiguous language of the court rule cannot be reconciled with Tobey. Therefore, the Court of Appeals erred when it concluded that MCR 6.120 codified Tobey. Daughenbaugh, supra at 509. The dissent contends that Daughenbaugh should nevertheless be viewed as “persuasive authority” for the proposition that MCR 6.120 codified our earlier decision in Tobey. Post at 256. We reject the dissent’s reliance on obiter dictum from Daughenbaugh as persuasive authority. Additionally, we note that Daughenbaugh cited no authority and omitted any analysis of the plain language of MCR 6.120 in support of its conclusion. Daughenbaugh, supra at 509. Instead, the Court of Appeals held that the charged offenses were “unrelated” and that severance was mandatory under two of the three primary sources on which Tobey had relied. Id. at 509-510. Perplexingly, the dissent asserts that our analysis of these sources “is of questionable assistance,” post at 251, but nonetheless describes the corresponding analysis in Daughenbaugh as “entitled to some weight.” Post at 256 n 11.

 Although Tobey referred to this language from Johns, as well as earlier caselaw that quoted such language approvingly, the dissent nevertheless insists that Tobey reached the exact opposite conclusion about temporal proximity “in the context of offenses committed as part of a single scheme.” Post at 253 n 5. This claim, however, does not comport with Tobey’s discussion of Johns. Tobey, supra at 148-149, quoting Jo (tres, supra at 623 (“ ‘It is to be noted that this Court has emphasized that the offenses charged in the several counts must arise out of substantially the same acts committed at the same time.’ ”); id. at 152 (“Mounts charging Johns with maintainng [sic] a gaming room table and with keeping a place where gambling was permitted were joined. ‘The acts committed .. . occurred within an hour and a half and out of substantially the same transaction.’ ”). The dissent, however, fails to acknowledge Tobey’s discussion of Johns and instead relies on the commentary accompanying the ABA Standards. See Tobey, supra at 152 n 15.

 We agree with the dissent that multiple offenses may be “related” as part of a single scheme or plan despite a lack of temporal proximity. See post at 261 n 25.

 See 2 ABA Standards for Criminal Justice (2d ed, ch 13).

 Id. at 6.

 Id. at 9-10. Specifically, Standard 13-1.2 provides that “[t]wo or more offenses are related offenses if they are based upon the same conduct, upon a single criminal episode, or upon a common plan.” Moreover, Standard 13-1.3 provides that “[u]nrelated offenses are any offenses which are not ‘related’ offenses.”

 Tobey, supra at 150, citing ABA Standards Relating to Joinder and Severance (Approved Draft, 1968), Standard 1.1.

 The dissent claims that “just as Tobey rejected connecting offenses solely on the basis that they are of ‘the same or similar character,’ MCR 6.120 omits that language from its definition of ‘related’ offenses.” Post at 254. In so doing, however, the dissent fails to acknowledge that neither Tobey nor the draft ABA standards mentions “related” offenses at all. See Tobey, supra at 150-153. Similarly, the dissent omits any discussion of the *243 revised ABA standards, which, unlike the draft version, no longer permitted the joinder of offenses “ ‘of the same or similar character, even if not part of a single scheme or plan.’ ” Id. at 151 n IS, quoting Draft Standard 1.1.

 MRE 404(b) provides, in relevant part:
(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

 See also Krist v Foltz, 804 F2d 944, 947-948 (CA 6, 1986) (agreeing with the Michigan Court of Appeals decision that while joinder of two robbery counts may have been improper, similarity in details of the two robberies and their closeness in time would have made evidence of one *244 crime admissible at the separate trial of the other; therefore, the petitioner suffered no prejudice from his counsel’s failure to move for severance).

 The dissent contends that evidence of each charged offense could have been introduced in the other trial under MRE 404(b) “[o]nly once such a [single] scheme has been shown.” Post at 269. The dissent’s argument, however, ignores the many bases on which MRE 404(b) permits evidence of other crimes, including “proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident.” See note 24 of this opinion.

 The language of FR Crim P 8(a) closely tracks the language of MCR 6.120. Nevertheless, some differences exist between the rules, including the concept of misjoinder. Failure to meet the requirements of FR Crim P 8(a) constitutes misjoinder as a matter of law. United States v Chavis, 296 F3d 460, 456-457 (CA 6, 2002). Unlike the federal rule, however, 1A Gillespie, Michigan Criminal Law & Procedure (2d ed), § 17:36, pp 227-228, states:
Where two distinct offenses were not committed at the same time, or were committed on different days,[11] or where the first was committed before a second and separate offense was *245 committed,[12] and they cannot be shown by the same evidence, they nonetheless can be joined in the same information, there being no such thing as misjoinder of offenses in Michigan.[13]

 People v. Dupree, 175 Mich. 632, 141 N.W 672 (1913).

 People v. Goulette, 82 Mich. 36, 45 N.W 1124 (1890).

 MCR 6.120(A).

 Our conclusion is also consistent with a recent case denying an application for a writ of habeas corpus, in relevant part because the petitioner was not prejudiced by the joinder of four counts of second degree criminal sexual conduct, MCL 750.520c(1)(a). Couturier v Vasbinder, 2008 WL 4613055 (ED Mich, 2008). In Couturier, the petitioner allegedly engaged in sexual contact with three first-grade students while the students sat on his lap. The district court concluded that the “ [petitioner was not prejudiced by the joinder of the charges, because both the trial court and the Michigan Court of Appeals found that each of the charges was admissible under M.R.E. 404(b) against the other charges to show that petitioner had a ‘plan, scheme, or system’ to sexually assault the different victims.”

 See State v Burchfield, 664 SW2d 284, 286 (Tenn, 1984) (“The primary inquiry into whether a severance should have been granted under Rule 14 is whether the evidence of one crime would be admissible in the trial of the other if the two counts of indictment had been severed.”).

 Three types of evidence showing a common scheme or plan exist in Tennessee:
(1) offenses that reveal a distinctive design or are so similar as to constitute “signature” crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction.” [Denton, supra at 13, citing State v Shirley, 6 SW3d 243, 248 (Tenn, 1999).]

 See State v Elston, 735 NW2d 196,199 (Iowa, 2007) (concluding that the charges against the defendant were part of a “common scheme or plan” even though “the temporal proximity of the alleged indecent contact and sexual exploitation offenses was not close and the modus operandi allegedly employed by [the defendant] was dissimilar.”).