# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ROBERT JOHN LAMMI,

Defendant-Appellant.

UNPUBLISHED
September 15, 2015

No. 321628, 321629
Iosco Circuit Court
LC No. 13-007976-FH,
13-007977-FH

Before: BORRELLO, P.J., and HOEKSTRA and O'CONNELL, JJ.

PER CURIAM.

Following a jury trial in these consolidated cases, defendant was convicted of two counts of delivery of less than 50 grams of a controlled substance, MCL 333.7401(2)(a)(iv), for delivering heroin to a confidential informant who was working with officers from the Michigan State Police Strike Team Investigative Narcotics Group (STING). Defendant was sentenced as a second habitual offender, MCL 333.7413(2), to concurrent terms of 54 months to 40 years in prison. The circuit court also ordered defendant to pay costs, including $300 in court costs. For the reasons set forth in this opinion, we affirm defendant's convictions and remand for the circuit court to articulate a factual basis to support the amount of costs imposed.

## A. FACTS

A confidential informant agreed to work with Oscoda and STING officers to purchase heroin from defendant following a traffic stop in which the informant was found to be in possession of heroin. The informant testified that he had been a heroin addict for about eight or nine years, and that he had had regular contact with defendant for four to five years. On April 22, 2013 and again on April 24, 2013, STING officers equipped the informant with prerecorded buy money and an audio transmitter. One of the STING officers, Detective Tyler Leslie, testified that he drove the informant to the area of defendant's residence on both dates, and waited for the informant to contact him after the purchases were completed.

After the sales were completed, the informant met with Detective Leslie and turned over the drugs that he purchased from defendant. The drugs were analyzed and determined to be heroin. Detective Leslie testified that the transmitter failed during the first controlled purchase but the informant told him that he had made contact with defendant, handed defendant the prerecorded $190 buy money, and, in exchange, defendant handed the informant four packages of heroin.

-1-

After the second controlled purchase, which was recorded and played for the jury, the informant told Detective Leslie that he had made contact with defendant's girlfriend, Ashley Weisenstein, who told him that the price for the heroin was $195. The informant told Weisenstein that he had agreed with defendant upon a price of $190. According to the informant, Weisenstein called to defendant in another room of the house and defendant told her that $190 was an acceptable price. Weisenstein disputed this account at trial, and testified that she was alone in the house during the second purchase and that defendant played no role in this delivery of the heroin. However, during an earlier court proceeding in which she tendered a plea to related charges, Weisenstein agreed that she acted on behalf of defendant when she delivered heroin to the informant.

The informant testified that he used heroin every day and had been addicted to it for about eight or nine years. He testified that he had known defendant for four or five years, and that during that time, he had seen defendant "[m]aybe every other day." The informant confirmed that he began working with Detective Leslie as a confidential informant after he was stopped and found to be in possession of heroin. The informant testified that he participated in the two controlled buys; he could not recall which time he gave money to Weisenstein and which time he gave it to defendant. The informant testified that defendant was present for both purchases; however, on the occasion when Weisenstein accepted his money, the informant did not know "exactly where [defendant] was at" or remember whether he had had a conversation with him. The informant did recall that when he gave the money to Weisenstein, she asked defendant "if $190 was okay, and he said yeah."

Defendant was convicted and sentenced as set forth above and he appeals as of right.

## B. ANALYSIS

## I. RIGHT TO PRESENT A DEFENSE

Defendant argues that the trial court improperly limited his cross-examination of Detective Leslie, the informant, Weisenstein, and Officer Kevin Kubik on the following subjects: (1) statements made by the informant to police officers during his initial traffic stop; (2) statements made by the informant to the police about his prior offenses; (3) whether the informant stole guns during prior home invasions he had committed; and (4) statements made by the prosecutor to Weisenstein before her trial testimony. Defendant asserts that by limiting his ability to cross-examine the witnesses on these topics, the court denied him his constitutional rights of confrontation and right to present a defense.

We review constitutional issues de novo. *People v Nunley*, 491 Mich 686, 696-697; 821 NW2d 642 (2012). To the extent that our inquiry involves reviewing a trial court's evidentiary rulings, we review a trial court's decision to exclude evidence for an abuse of discretion. *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003). "An abuse of discretion occurs when the court chooses an outcome outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). However, whether admissibility is precluded by a rule of evidence involves an underlying question of law that we review de novo. *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003).

The Sixth Amendment's Confrontation Clause provides that "'[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *People v Taylor*, 482 Mich 368, 375; 759 NW2d 361 (2008), quoting US Const, Am VI; see also Const 1963, art 1, § 20. "In interpreting the Confrontation Clause, the United States Supreme Court maintains that the right to present a defense is a fundamental right afforded to criminal defendants." *People v Parks*, 483 Mich 1040, 1049; 766 NW2d 650 (2009) (YOUNG, J., concurring) (citations omitted). However, the right to present a complete defense "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012) (quotation marks omitted). An "accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984) (quotation marks and citations omitted).

Defense counsel's cross-examination about the informant's ability to respond to questions and to drive while under the influence of heroin was irrelevant under MRE 401 and properly excluded. Detective Leslie's testimony regarding whether heroin generally impairs a person's ability to drive was not relevant in determining whether defendant delivered heroin to the informant. The court's decision did not limit defendant's ability to attack the informant's credibility. Evidence was admitted that the informant was a heroin addict who had heroin in his vehicle during the traffic stop, and defense counsel highlighted testimony from Detective Leslie and Officer Kubik that the informant stated he "would do whatever he had to do to stay out of trouble." Thus, defense counsel was able to argue that the informant was not credible and was biased against defendant. Any evidence concerning the informant's driving ability was not relevant to the outcome of the case or in determining whether he was a credible witness. Thus, defendant's right to confrontation and to present a defense were not denied by the court's exclusion of this evidence.

Defendant also claims that the trial court improperly excluded testimony regarding statements that the informant allegedly made to police concerning his prior home invasion offenses. According to defendant, these statements were relevant to establish a reason as to why the informant may have fabricated his testimony. Regardless of the prior home invasions, defense counsel had the opportunity to argue that the informant was motivated to fabricate his testimony in that the jury was aware that the informant agreed to work with police after drugs were found in his vehicle during a traffic stop. Defendant has failed to establish error.

Defendant also asserts that he should have been permitted to cross-examine the informant about whether he stole guns or knew that his co-perpetrators stole guns in the course of committing home invasions. The informant testified on direct examination that he committed home invasions in order to get money for drugs, and testified on cross-examination that he stole guns and was present when co-perpetrators stole guns. The trial court then sustained the prosecutor's objection to this line of questioning on relevance grounds, stating that whether the informant was "involved in any break-ins where guns were taken" was irrelevant. On appeal, defendant does not explain how this evidence was relevant to his defense, but claims instead that due process "requires" the court to permit him to place the witness in the context of his "circumstances and setting." Defendant has not cited authority to support this argument, and we do not find it persuasive. Although it was appropriate for defense counsel to attack the informant's credibility by questioning him about his prior offenses, evidence that guns were

stolen was not relevant because it had no effect on the disposition of any fact at issue. MRE 401. Moreover, the jury heard that the informant stole guns and was present when guns were stolen by others during home invasions. The court did not strike that testimony from the record. Thus, defendant cannot show that he was prejudiced where the jury was aware of the gun thefts.

Finally, defendant argues that the trial court erred in refusing to permit Detective Leslie to testify on cross-examination as to statements that the prosecutor allegedly made to Weisenstein during a meeting before she testified. The trial court excluded the testimony as hearsay, noting defendant would be permitted to ask Weisenstein directly about the conversation. The trial court did not abuse its discretion in excluding the testimony. Testimony concerning the prosecutor's out-of-court statements offered for the truth of the matter asserted constituted hearsay under MRE 801 and defendant has failed to articulate how the proffered testimony fell within any of the exceptions to the hearsay rule.

In sum, defendant has failed to show that the trial court erred with respect to its evidentiary rulings during defense counsel's cross-examination of the witnesses. Accordingly, defendant was not denied his right of confrontation or his right to present a defense.

## II. ADMISSIBILITY OF EVIDENCE

Defendant challenges several of the trial court's evidentiary rulings. We review a trial court's decision to exclude evidence for an abuse of discretion. *Katt*, 468 Mich at 278. However, whether admissibility is precluded by a rule of evidence involves an underlying question of law that we review de novo. *McDaniel*, 469 Mich at 412.

Defendant contends that the trial court erred in excluding evidence about criminal activity in the area. Specifically, during cross-examination, defense counsel questioned Officer Kubik about the total number of home invasions during the winter of 2012-2013 that were committed in the area where defendant lived. The court excluded the testimony, noting that offenses committed by individuals other than the informant were irrelevant. Defendant contends that the court erred because the evidence was relevant to show that the informant was a "paid[-]for liar," and this testimony would have placed the plea deal the informant received for his participation in defendant's case "in its proper setting."

Defendant has failed to show that testimony about unrelated criminal activity in the area where he lived was relevant to the issue of whether he committed the charged offenses—i.e. whether he delivered heroin to the informant or to the jury's determination of whether the informant was a credible witness. See MRE 401. Moreover, the informant admitted at trial that he committed several home invasions to get money for drugs, which provided a basis for defendant to attack the informant's credibility. Evidence about other criminal activity would not have proved anything that was not already introduced at trial and the trial court did not abuse its discretion in excluding the evidence.

Next, defendant contends that the trial court erred in excluding a pre-trial letter that Weisenstein wrote to defense counsel. In the letter, Weisenstein recanted her plea hearing testimony wherein she admitted to delivering heroin to the informant at defendant's request. In the letter and at trial, Weisenstein stated that she acted alone. To the extent that defendant argues

the letter was admissible for impeachment purposes as an exception to the hearsay rule, Weisenstein testified at trial and recanted her former testimony. Therefore, the letter was at best cumulative evidence that was properly excluded under MRE 403. The trial court did not abuse its discretion in excluding the letter.

### III. JOINDER

Next, defendant contends that the trial court erred in consolidating the cases arising from the two drug transactions. Before trial, the prosecutor filed a motion to consolidate the cases arising from the two deliveries of heroin under MCR 6.120 because the charges were "identical, and the offenses are based on a series of connected acts;" and because the witnesses and venue were the same for both cases. Defendant objected, arguing that the motion was untimely and that it would cause prejudice. The trial court granted the motion to consolidate in the interest of economy and based on its findings that the cases were "related and [involve] pretty much the same witnesses." On appeal, defendant argues that joinder was not proper because the charges were not related under MCR 6.120.

We review a trial court's ultimate decision on joinder of offenses for an abuse of discretion. *People v Duranseau*, 221 Mich App 204, 208; 561 NW2d 111 (1997).

MCR 6.120 governs joinder of offenses charged in multiple informations against a single defendant and it provides in pertinent part as follows:

> [o]n its own initiative, the motion of a party . . . the court may join offenses charged in two or more informations or indictments against a single defendant . . . when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.

> Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on

> (a) the same conduct or transaction, or

> (b) a series of connected acts, or

> (c) a series of acts constituting parts of a single scheme or plan. [MCR 6.120(B)(1).]

Under MCR 6.120, joinder is permissible when offenses are "related," meaning "they comprise either 'the same conduct' or 'a series of connected acts or acts constituting part of a single scheme or plan.'" *People v Williams*, 483 Mich 226, 233; 769 NW2d 605 (2009), quoting MCR 6.120(B)(1) and (2).[1] Here, the trial court did not abuse its discretion in finding that the

---

[1] Defendant cites *People v Tobey*, 401 Mich 141, 151; 257 NW2d 537 (1977), to support that his cases should not have been joined because the conduct did not flow from a single act or transaction. However, defendant's reliance on *Tobey* is misplaced as that case has been

charged offenses were related in that they comprised the same conduct, and were arguably a series of connected acts, or acts constituting part of a single scheme or plan. The informant purchased the same amount of heroin from defendant for the same amount of money on two occasions within a short period of time. On both occasions, according to the informant, defendant directed the transactions; defendant told the informant when to come to his residence in order to complete the transaction and fixed or approved the price of the drugs. Defendant's claim that the acts "involved different conduct" is simply not supported by the record.

Defendant argues that joinder was improper because the underlying acts were committed on different days. However, in *Williams*, our Supreme Court explained that "the unambiguous language of MCR 6.120 does not mandate the existence of temporal proximity between several offenses," but rather "permits joinder of offenses that were not committed at the same time but nevertheless constitute a series of connected acts or acts constituting part of a single scheme or plan." *Williams*, 483 Mich at 241. Selling the same amount of heroin to the same purchaser for the same price in the same place on two separate occasions within a two-day period can fairly be described as a "single scheme or plan." In short, the court did not abuse its discretion by joining the cases.

## IV. PROSECUTORIAL MISCONDUCT

Defendant contends that the prosecutor engaged in misconduct during the direct examination of Detective Leslie, which led to prejudicial testimony that tainted the trial.

"Issues of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).

During the prosecutor's examination of Detective Leslie, she asked him to describe what he did with the "information" he received from the informant that "he could purchase four packs of heroin from [defendant] at his residence." Detective Leslie responded that when the informant mentioned defendant's name to him, "I have prior knowledge of what—where [defendant] lives from working in the Oscoda Township area, and have prior information that [defendant] is a heroin trafficker." The trial court sustained defense counsel's objection to the comment, ordered that it be stricken from the record, and instructed the jury to disregard it. Defense counsel asked the court to approach for a sidebar conference, and the court responded, "I've sustained the objection, stricken the language from the record, and advised the jury not to take that into consideration. I don't know as there's much more we can do." Defendant contends that the improper remark denied him due process and a fair trial.

In this case, the line of questioning does not support that the prosecutor acted improperly or intentionally elicited Detective Leslie's response. The question could fairly be construed to be a request for a description of the undercover operation that was put into place after the informant

superseded by MCR 6.120 and is no longer controlling law. See *People v Williams*, 483 Mich 226, 238; 769 NW2d 605 (2009).

disclosed that he purchased heroin from defendant. Instead, Detective Leslie made a prejudicial comment about defendant being a known heroin trafficker. There is nothing to support that the prosecutor intentionally elicited this information and therefore we cannot find that the prosecutor engaged in misconduct. See *People v Waclawski*, 286 Mich App 634, 709-710; 780 NW2d 321 (2009) (holding that a prosecutor does not commit misconduct when a witness provides an unresponsive, volunteered answer to a proper question).

Furthermore, the prejudicial remark did not deny defendant due process or a fair trial. The remark was isolated and the trial court took immediate corrective action to limit the prejudice. The court ordered the remark stricken from the record and provided a curative instruction to the jury, directing the jury not to consider the remark. The court's prompt action served to cure the taint of the remark and assured that defendant was not denied a fair trial. See *Unger*, 278 Mich App at 235 ("[c]urative instructions are sufficient to cure the prejudicial effect of most inappropriate [statements] . . . and jurors are presumed to follow their instructions."). Defendant is not entitled to a new trial.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

In a Standard 4 brief, defendant argues that trial counsel failed to file a notice of alibi in this case despite the fact that defendant informed him of his alibi defense on August 13, 2013, approximately six months before the first day of trial.

A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law; we review a trial court's factual findings, if any, for clear error, while constitutional issues are reviewed de novo. *People v Grant*, 470 Mich 477, 484-485; 684 NW2d 686 (2004). Because there was no *Ginther*[2] hearing held in this case, our review is limited to mistakes apparent on the record. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

To establish ineffective assistance of counsel, a defendant must first show that counsel's performance was deficient on an objective standard of reasonableness. *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011). Second, defendant must also show that the deficient performance prejudiced the defense by showing that, but for the deficiency, there is a reasonable probability that the result of the proceeding would have been different. *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011).

On appeal, defendant claims that trial counsel's failure to file notice of intent to present an alibi defense was simply a matter of deficient performance. Defendant claims that counsel met with his alibi witness (defendant's employer, John Pulda), and provides a copy of Pulda's affidavit in which Pulda stated that he visited with trial counsel "[n]ot less than 10 Days [sic] before trial," showed him defendant's time cards "proving that [defendant] was at work during the time the police alleged the offense to have occurred," and explained his willingness to testify at trial. According to defendant, trial counsel later sent him a letter in which he advised him "of

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

the time to file a Notice of Alibi," but then failed to file the notice. Although defendant does not provide a copy of this letter on appeal, he does provide a copy of a letter written from trial counsel to appellate defense counsel concerning the alibi defense. In the letter, trial counsel stated, in part, as follows:

> The supposed alibi defense was brought to my attention well after the Circuit Court Arraignment, and well after Mr. Lammi had information as to the dates of the offenses. A review of my correspondence does not reveal a copy of a letter from myself to Mr. Lammi regarding this issue; however, I recall speaking with him about it and explaining to him why we could not pursue an alibi defense. I also had ethical concerns about that defense.

Although trial counsel did not articulate in his letter to appellate counsel the explanation he gave to defendant as to "why we could not pursue an alibi defense," counsel did state that he had "ethical concerns" about it. The circumstances surrounding trial counsel's handling of Pulda support that counsel adequately investigated the potential witness before making a strategic decision not to call Pulda as a witness. There is nothing to support that counsel acted deficiently in making this decision and we will not second-guess the decision on appeal. See *People v Dixon*, 263 Mich App 393, 398, 688 NW2d 308 (2004) (quotation marks and citations omitted) ("Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which we will not second-guess with the benefit of hindsight."). In short, defendant was not denied the effective assistance of counsel.

## VI. SENTENCING

Defendant challenges the scoring of Offense Variable (OV 14). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

MCL 777.44(1) governs the scoring of OV 14 and directs a sentencing court to assign 10 points where "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). Defendant objected at sentencing to scoring OV 14 at 10 points, arguing that the evidence did not support a finding that he was a "leader" in either drug transaction. The court found that OV 14 was properly scored, noting that the informant had "made the arrangements with" defendant, and that Weisenstein had to verify the price of the heroin with defendant during the second transaction. The court therefore concluded that the evidence sufficiently established that defendant was a leader.

A sentencing court "view[s] the entire criminal episode when determining if an offender was a leader in a multiple offender situation." *People v Apgar*, 264 Mich App 321, 330; 690 NW2d 312 (2004). This Court has defined "leader" in the context of OV 14 as "'a person or thing that leads'" or "'a guiding or directing head, as of an army or political group.'" *People v Rhodes (On Remand)*, 305 Mich App 85, 90; 849 NW2d 417 (2014), quoting *Random House Webster's College Dictionary* (2001). In this case, the trial court did not clearly err in scoring

OV 14 at 10 points where there was a preponderance of the evidence to support that defendant guided or directed the second drug transaction. Specifically, the informant testified that he corresponded exclusively with defendant to set up the transactions, and that defendant set the price and delivered the heroin during the first transaction. The informant testified that defendant also set the price for the heroin during the second transaction, although he did not personally deliver the heroin. Weisenstein, despite recanting her earlier statement that defendant was involved in the second delivery of heroin, testified at trial that the informant told her he and defendant had agreed upon a price of $190 for the heroin. Based on the evidence offered at trial, it was not error for the court to find that defendant acted as a leader in the commission of the offense and to assign 10 points for OV 14.

Finally, defendant challenges the costs assessed at sentencing. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

At sentencing, the trial court ordered defendant to pay restitution as well as $68 in state costs, $130 crime victim's assessment, $300 court costs, a $500 fine, and a $150 supplemental substance abuse cost for case number 13-7976-FH. For case number 13-7977-FH, the court ordered defendant to pay restitution plus $68 state costs and a $130 crime victim's assessment. On appeal, defendant highlights the "$68.00 in state costs" ordered for both cases, and the $300 court costs for case file 13-7976-FH, and asserts that the "costs must be vacated." Other than citing *People v Cunningham*, 496 Mich 145; 852 NW2d 118 (2014), defendant fails to provide any analysis or otherwise develop his argument. Given that *Cunningham* concerned court costs under MCL 769.1k(b)(ii), and considering that defendant fails to offer any argument or other citation to authority to challenge the other assessed costs, we address this issue as a challenge to the $300 court costs. See *People v Kelly*, 231 Mich App 627, 640–641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims.").

With respect to the $300 court costs, in *Cunningham* our Supreme Court held that MCL 769.1k(b)(*ii*) did not give courts independent authority to impose costs, but rather "provide[d] courts with the authority to impose only those costs that the Legislature has separately authorized by statute." *Cunningham*, 496 Mich at 147. Subsequently, the Legislature amended MCL 769.1k and the amendment became immediately effective on October 17, 2014. 2014 PA 352. The relevant provisions of 2014 PA 352 provided that the amendment applied to "all fines, costs, and assessments ordered or assessed" under MCL 769.1k before June 18, 2014 as well as after the effective date of the amendment. 2014 PA 352.

Under the amended version of the statute, the court may impose "[a]ny cost authorized by the statute for a violation of which the defendant entered a plea of guilty or nolo contendere or the court determined that the defendant was guilty." MCL 769.1k(b)(*ii*). We have noted that the amended act was a curative measure to address the authority of courts to impose costs under MCL 769.1k before the issuance of *Cunningham*, and that the amended version of the statute "applies to all fines, costs, and assessments under MCL 769.1k before June 18, 2014, and after the effective date of the amendatory act." *People v Konopka*, __ Mich App __, __; __ NW2d __ (2015) (Docket No. 319913) (Slip op at 2). Based on the amended statute and this Court's holding in *Konopka*, the circuit court did not err in imposing court costs in this case. However, under the statute, the trial court was required to articulate a factual basis for the amount of court

costs imposed—i.e. the $300.  See *Konopka*, ___Mich App at ___ (Slip op. at 15).  Accordingly, remand to the trial court is appropriate so that the court can establish a factual basis for the amount of court costs imposed.  *Id.*

Affirmed in part and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell