*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

TAYLOR STORM BREINING,

      Defendant-Appellant.

UNPUBLISHED
June 2, 2022

No. 357633
Jackson Circuit Court
LC No. 20-003035-FC

Before: LETICA, P.J., and MARKEY and O'BRIEN, JJ.

PER CURIAM.

Defendant has been charged with assault with the intent to murder, MCL 750.83, armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, as a second-felony offender, MCL 769.10. In this interlocutory appeal, defendant appeals by leave granted[1] the trial court's order denying defendant's motion to sever the charges into two separate trials. We affirm.

## I. FACTS

Defendant's charges arise from events on Sunday, September 6, 2020, when defendant and codefendant, Samuel Boyer, allegedly engaged in what the prosecutor and the trial court have characterized as a "crime spree" in Jackson County. At the joint preliminary hearing for defendant and Boyer, evidence was presented related to three specific incidents.

The first incident involved an alleged armed robbery at a camper where Jonathan Whiting lived. Whiting personally knew both defendant and Boyer, having met them in jail. According to Whiting, in the early morning hours of September 6th, defendant, Boyer, and three women came

---

[1] This Court initially denied leave to appeal. *People v Breining*, unpublished order of the Court of Appeals, entered July 26, 2021 (Docket No. 357633). Thereafter, our Supreme Court remanded the matter for consideration as on leave granted. *People v Breining*, 967 NW2d 630 (Mich, 2022).

to his camper located at his parents' property and woke him up. Defendant and Boyer initially had their faces covered with bandanas. When Whiting opened the door, defendant was holding a black handgun, which he pointed at Whiting's face. Boyer also had a gun, which Whiting described as "like an assault gun" or a long rifle. Whiting later saw Boyer had a handgun as well. One of the women, whom Whiting identified as Boyer's girlfriend, was carrying what "looked like a sawed[-]off shotgun."[2]

The two other women were unarmed.[3] They were April Rudd and Christina Green (or McConnell). Whiting formerly dated Green, but she had moved out two weeks prior, after living with Whiting for a month. Green kept asking if her property was there. In particular, Whiting recalled that Green wanted some clothing. Whiting maintained that he had left Green's "stuff" at Rudd's garage. Rudd knew Green's items were in Rudd's garage because Rudd had texted Whiting about putting them there. That text was on Whiting's iPhone, which Green took. Whiting also recalled something being said about fishing tackle that Whiting had not paid for and belonged to Boyer, a third-party, or someone else.[4]

While keeping their guns pointed at Whiting, defendant and Boyer entered the camper and began taking Whiting's property, including Whiting's clothing, stereo equipment, tools, laptops, cell phone, fishing equipment, watches and jewelry, and "pretty much everything." The women waited outside the camper, running Whiting's belongings back and forth from his camper to their cars. According to Whiting, the group had two smaller, "dark colored cars." One of the vehicles was a Ford, but Whiting was not sure about the make of the other vehicle. In addition to taking Whiting's property, defendant and Boyer also demanded to know where Whiting kept his money. If Whiting did not answer their questions right away, they would "jam" their weapons in his "face even more." Whiting estimated the incident lasted 1½ to 2 hours and involved threats to shoot him. After defendant and his cohorts left, Whiting retreated to his parents' home and took a nap. He later reported the incident to his father, who called 911.

The second incident took place at Frank's Shop Rite in the Village of Grass Lake, about a mile away from Whiting's location. Frank Bednarski, the shop owner, arrived there between 7:00 and 7:30 a.m. At approximately 9:20 a.m., he was in the process of leaving when he noticed his truck had several bullet holes in its passenger side. Reviewing the store's surveillance footage, Bednarski saw a blue Chevy Cruze enter the store's parking lot. The vehicle slowed down, a hand came out of the front, passenger-side window, and, after a brief "flash" from the hand, the car left

---

[2] There is no indication in the record that this woman has been charged.

[3] There is no indication in the record that either woman has been charged.

[4] A claim of right defense is viable "if a defendant had a good faith belief that the defendant had a legal right to take the property at issue." *People v Cain*, 238 Mich App 95, 119; 605 NW2d 28 (1999). See also *People v Holcomb*, 395 Mich 326, 333; 235 NW2d 343 (1975); *People v Karasek*, 63 Mich App 706, 710-714; 234 NW2d 761 (1975). Whiting, however, maintained that the property taken from the camper belonged to him alone. More specifically, Whiting denied that it belonged to defendant, Boyer, or any of the women.

the parking lot. Bednarski called 911 to report the shooting. Unlike Whiting, however, Bernarski did not know defendant or Boyer.

The third incident on September 6th involved the shooting of Austin Puhr. Like Whiting, Puhr knew both defendant and Boyer. Puhr met defendant in jail years earlier, and thereafter, sold him methamphetamine. Puhr was staying at the America's Best Hotel in Blackman Township when defendant contacted him on Facebook, inquiring whether Puhr "had anything." Puhr informed defendant that he had methamphetamine and they arranged to meet.[5] Defendant told Puhr that he had $100, which was sufficient to purchase about a gram of methamphetamine.

Puhr asked defendant to let him know when he was on his way. Later, a small blue Chevy car, which Puhr recognized as one that defendant sometimes drove, pulled up in the area of a Bob Evans restaurant[6] and Starbucks. Typically, Puhr would jump into defendant's car, make the exchange of drugs for money, and hop out. When Puhr jumped into the front passenger seat this time, he noticed defendant was driving and Boyer was sitting in the middle of the backseat. Boyer had never before been present during their prior drug transactions. Defendant then drove away with Puhr, telling him to give them "the shit." Puhr reported that defendant and Boyer did not have the money. Defendant also locked the car's doors and held onto Puhr's left arm to keep him inside the car. From the backseat, Puhr heard a gun being racked. Puhr turned around briefly and saw Boyer with a black handgun. Puhr managed to open the car door, jump out, and run. He did not recall much of what happened next, but he remembered running back toward the America's Best. Puhr was on the grass near Bob Evans when he saw the car double back toward him. Although Puhr remembered hearing gunshots, he did not recall feeling them. The next thing Puhr recalled was lying on the grass and looking up at the sky. Puhr was shot six times. After being transported to the hospital, Puhr was placed in a medically-induced coma for two weeks and underwent multiple surgeries to repair the injuries inflicted.

Jordan Cole witnessed the Puhr shooting. Cole offered a similar description of the event. At approximately 6:00 or 6:30 p.m., Cole saw a darker, "blueish," smaller-sized sedan swerve into a neighbor's yard. A man either jumped away from or out of the car's passenger side, and Cole heard gunshots. The man ran away, but the car made a U-turn in the middle of the street, following the man off the road and on to a field by the Bob Evans. The car looked like it was trying to chase the man down to run over him. After the man dove out of the way, Cole heard additional gunshots. Cole called 911. Cole also recounted that the driver of the vehicle appeared to be wearing a face covering, possibly a black-and-blue "neck gaiter."

The Jackson County Sheriff's Office investigated the second incident at Frank's Shop Rite. Detective-Sergeant Bryan Huttenlocker testified that law enforcement was aware of multiple incidents involving guns and a blue Chevy Cruze. The first incident involving Whiting appears to have been investigated by the Michigan State Police and Blackman Township. The third incident

---

[5] The prosecution provided Puhr with an immunity agreement regarding any potential criminal charges arising from the possession, transportation, or attempted distribution of controlled substances to defendant and Boyer.

[6] The Bob Evans is approximately thirteen miles from Frank's Shop Rite.

involving Puhr was also investigated by Blackman Township police, who contacted Huttenlocker to report a blue Chevy Cruze was involved. Detective Allen from Blackman Township also stated that he might be calling Huttenlocker later as they would probably want to conduct a joint investigation.

At about 12:30 a.m. on September 7th, deputies contacted Huttenlocker to report that they had some suspect information. In turn, Huttenlocker contacted Detective Allen to coordinate and head to a location. But further investigation determined that the Chevy Cruze they were looking for was not there.

Detective Allen came to that location and the Sheriff's Department had five names. Because Detective Allen was familiar with Rudd, who lived around the corner, he talked to her and she provided additional information. In the interim, Huttenlocker had also called in Detective Freeman to follow up with Whiting. Detective Freeman later provided two addresses, including Rudd's.

Thereafter, the police stopped and arrested Boyer, who had left the second address and was driving the blue Chevy Cruze. The police obtained a search warrant for the home, finding relevant items, including weapons.

The police also went to the home where defendant had rented a bedroom. Defendant refused to come out. The police obtained a warrant and the special response team arrested him.

The following day, Detective-Sergeant Huttenlocker interviewed both defendant and Boyer regarding the incident at Frank's Shop Rite. Defendant admitted he was in the blue Chevy Cruze on September 6, 2020, sitting in the passenger seat as he and Boyer drove "around aimlessly." Defendant explained that he had just purchased a new handgun. As defendant was looking at his cell phone, Boyer reached over him and shot multiple rounds from defendant's gun out of the passenger-side window.

During Boyer's interview, Boyer initially denied knowing who shot at the truck at Frank's Shop Rite. But, after being informed that defendant had identified Boyer as the shooter, Boyer confessed that he was driving the blue Chevy and fired through the passenger-side window.

On September 8, 2020, a felony complaint charging defendant with AWIM and felony-firearm as to the Puhr incident was filed. Over a month later, an amended felony complaint was filed adding charges of armed robbery and felony-firearm as to the Whiting incident along with discharge of a firearm from a vehicle, MCL 750.234a(1)(a), as to the incident at Frank's Shop Rite.

At the preliminary examination, however, the prosecutor asked the district court to strike the felony-firearm charge associated with the AWIM charge because there was no evidence that defendant had a gun during the incident related to Puhr. And despite the prosecutor's arguments that defendant could be convicted as an aider and abettor, the district court also declined to bind over defendant on the charge of discharging a firearm from a vehicle at Frank's Shop Rite. The district court reasoned that the evidence showed that defendant was present in the car, but Boyer was driving and fired the shots. Thus, as to defendant, the district court bound over on three counts: armed robbery and felony-firearm as to Whiting and AWIM as to Puhr. As to codefendant Boyer,

the district court bound over on all five charges: armed robbery and felony-firearm as to Whiting, discharge of a firearm from a vehicle at Frank's Shop Rite, and AWIM and felony-firearm as to Puhr.

In the circuit court, defendant moved to sever the charges because they were unrelated. Defendant asserted that the two incidents were separate, not based on the same conduct or transaction, and they could not be considered a series of connected acts or a series of acts constituting parts of a single plan or scheme. Defendant maintained that the charges were unrelated and that failure to sever them would prejudice him because the jury would "use evidence with respect to one act as proof somehow that he was a bad person and therefore committed the other acts."

In response, the prosecutor argued that the incidents were part of series of connected acts within the meaning of MCR 6.120(B). The prosecutor characterized the events on September 6, 2020, as a "single prolonged and violent crime spree" perpetrated by defendant and Boyer in the course of a day, in the same geographic area, using the same vehicle, and using firearms during each incident. The prosecutor also asserted that jury instructions could be provided to ensure that the jury did not use the different events for propensity purposes.

Following a hearing, the trial court denied defendant's motion to sever the charges. The trial court reasoned:

> [T]he Court is going to make . . . a finding as follows. That I am going to find that these are a series of connected events. We're dealing with a—with a 12-hour crime spree that I agree with [the prosecutor], started as an armed robbery and it ended as an armed robbery.
>
> Not only are the crimes related by sheer proximity and time to one another, they are all perpetrated by the same two individuals, one directly after the other throughout the course of a single day—12-hour spree. They all involve the use of a firearm. In fact [they] were all perpetrated by the use of the same vehicle, a blue Chevy Cruze.
>
> The . . . State cites *People v [Vegh]*, [unpublished per curiam opinion of the Court of Appeals, issued January 11, 2018 (Docket No. 333242)], which they attach to their brief. In that case, the defendant was charged with [c]riminal [s]exual [c]onduct of multiple different victims throughout the course of several days. The fact that the separate charges involve different victims at different times was not a proper justification for the severance of the defendant's charges.
>
> So in this case, I think that there is a sufficient series of connections between the all—alleged acts such that they should not be severed.
>
> I don't think that there's undue prejudice in this case either, because among other things, if the State did have to chop up their case and try separate cases, they . . . would bring in . . . MRE 404[(b)] evidence. [The c]ourt would . . . [in] all likelihood give limiting instructions. This may be a case where it's appropriate to use limiting instructions.

But sometimes I think the law should find . . . the cases, when they're related to a series of connected events as they are in this case, should be tried all as . . . one piece, not piece-mealed out into separate different episodes.

So I end up, like the case with . . . [*People v Jeffrey*] *Nathaniel* . . . [*Pope*, unpublished per curiam opinion of the Court of Appeals, issued March 23, 1999 (Docket No. 204645),] and I'm trying to explain to the jury – . . . I can't explain why [the Jackson Narcotics Enforcement Team's] . . . there looking for drugs because the [j]udge has cut me off at the knees saying you can't talk about that. You can only talk about the shooting of the police officers.

Well, later on the Court of Appeals said, "Nu-uh, Judge Grant, you were wrong about that. You should have let the prosecutor try [th]em both again [sic]." They were a series of connected events randomly with a short time frame that we're dealing – (undecipherable) – in this case, so.

Motion to sever the cases is . . . denied. Motion to sever the defendants from – into separate trials is denied.

Thereafter, the trial court entered an order denying defendant's motion to sever for the reasons stated on the record.[7] This appeal followed.

## II. ANALYSIS

On appeal, defendant argues that the trial court erred by denying his motion to sever the charges and to hold two trials: one related to Whiting and the second related to Puhr. As in the trial court, defendant again maintains that the charges are not related within the meaning of MCR 6.120. According to defendant, the evidence regarding the distinct incidents would not be admissible as other-acts evidence in separate trials, and joinder of the charges will unfairly prejudice defendant by allowing the prosecutor to use the separate incidents as propensity evidence. Additionally, defendant contends for the first time on appeal that joinder violates due process and that joinder will infringe on his decision whether to testify on one charge while remaining silent on other counts. We disagree.

## A. STANDARD OF REVIEW

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011) (quotation marks and citation omitted). In this case, defendant moved to sever the charges related to Whiting

---

[7] In the circuit court, codefendant Boyer also moved to sever the charges, asserting that his five charges should be tried in three separate trials relating to Whiting, Frank's Shop Rite, and Puhr. The trial court also denied Boyer's motion to sever. Boyer filed an interlocutory application for leave to appeal, which this Court denied "for failure to persuade [it] of the need for immediate appellate review." *People v Boyer*, unpublished order of the Court of Appeals, entered May 17, 2021 (Docket No. 356808). Boyer did not appeal to the Supreme Court.

and Puhr into two separate trials on the basis that the charges were not related within the meaning of MCR 6.120. This issue is, therefore, preserved for review. See *Danto*, 294 Mich App at 605. However, for the first time on appeal, defendant also argues that failure to sever the charges will violate his constitutional rights to due process and to testify or remain silent. "[A]n objection on one ground is insufficient to preserve an appellate argument based on a different ground." *Id*. Defendant's motion to sever did not raise these constitutional issues, and these constitutional issues are, therefore, not preserved for our review. See *id*.

> Whether joinder is appropriate is a mixed question of fact and law. To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute related offenses for which joinder is appropriate. This Court reviews a trial court's factual findings for clear error and its interpretation of a court rule, which is a question of law, de novo. [*People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222 (2014) (quotation marks and citation omitted).]

Whether charges are related is a question of law that this Court reviews de novo. *People v Girard*, 269 Mich App 15, 17; 709 NW2d 229 (2005). "However, the ultimate decision on permissive joinder of related charges lies firmly within the discretion of trial courts." *Gaines*, 306 Mich App at 304 (quotation marks and citation omitted). Generally, this Court reviews constitutional claims de novo. *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016). However, defendant's constitutional arguments regarding due process and his right to testify or remain silent are unpreserved, and accordingly, this Court's review is limited to plain error affecting defendant's substantial rights. *Id*. at 201-202.

## B. JOINDER OF RELATED OFFENSES UNDER MCR 6.120

Joinder and severance of charges is governed by MCR 6.120, which, in relevant part, states:

> (B) Postcharging Permissive Joinder or Severance. On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.

> (1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on

>> (a) the same conduct or transaction, or

>> (b) a series of connected acts, or

>> (c) a series of acts constituting parts of a single scheme or plan.

> (2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either

-7-

the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

(3) If the court acts on its own initiative, it must provide the parties an opportunity to be heard.

(C) Right of Severance; Unrelated Offenses. On the defendant's motion, the court must sever for separate trials offenses that are not related as defined in subrule (B)(1).

As explained by the Michigan Supreme Court, "[w]hen the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate" under MCR 6.120. *People v Williams*, 483 Mich 226, 237; 769 NW2d 605 (2009) (quotation marks and citation omitted). However, the court rule "does not permit the joinder of those offenses that are only of the same or similar character." *Id*. at 246 (quotation marks omitted). Whether evidence of the separate charges would be admissible in separate trials is "an important consideration" because joinder of charges "cannot prejudice the defendant more than he would have been by the admissibility of the other evidence in a separate trial." *Id*. at 237 (quotation marks and citation omitted).

In this case, the trial court did not err by concluding that offenses—involving acts of robbery or attempted robbery by the same defendants, on the same day, in close geographic proximity, using the same vehicle as well as handguns—amounted to a "crime spree" of offenses related within the meaning of MCR 6.120(B) as a series of connected acts or a series of acts constituting a single plan. Because the offenses are related, defendant was not entitled to severance under MCR 6.120(C). And, on the facts of this case, the trial court did not abuse its discretion by denying defendant's motion to sever under MCR 6.120(B).

As detailed by the trial court, the crimes at issue took place in a 12-hour period in relatively close geography proximity in Jackson County. Both defendant and Boyer participated in the crimes, using weapons, including defendant's handgun. During the robbery in the morning, defendant pointed a handgun at Whiting while Boyer held a longer rifle, and they demanded property from Whiting. Whiting described the vehicle used by defendant and Boyer as a smaller, dark sedan. Whiting also noted that defendant and Boyer arrived at his property with their faces covered. Whiting personally knew both defendant and Boyer: he had met them both in jail.

After robbing Whiting and before the incident with Puhr, according to defendant's statement to police, defendant and Boyer drove around "aimlessly" in a blue Chevy Cruze, and Boyer used defendant's handgun to shoot at a truck in a parking lot.

Later in the day, defendant and Boyer attempted to commit a second armed robbery. They again targeted a personal acquaintance—someone who, like Whiting, had a criminal history and had met defendant while in jail. Again, driving a dark colored sedan—more specifically identified by Puhr as a blue Chevy Cruze—defendant and Boyer held Puhr at gunpoint and demanded property from him. Defendant has attempted to characterize the events with Puhr as simply a "drug deal gone bad" as if that would somehow mean that it did not involve an attempted robbery, but Puhr's testimony supports that defendant and Boyer had no intention of buying drugs. They showed up with no money to pay Puhr, and instead, Boyer pointed a handgun at Puhr while

defendant demanded that Puhr give them "the shit." Unlike Whiting, Puhr refused to comply with defendant's and Boyer's demands, and he was shot and nearly killed as a result. An eyewitness to the Puhr incident also noted that—as during the incident in the morning—defendant was wearing a face covering, possibly a neck gaiter.

On the whole, the sequence of events on September 6, 2020, evinces that defendant and Boyer undertook two robberies in Jackson County in the course of approximately 12 hours, and in doing so, they targeted victims known to them, used a handgun, drove a dark sedan, and wore face coverings. Defendant is certainly correct that the events are not identical. Nevertheless, the temporal proximity, the geographic proximity, the participation of both defendant and Boyer, the similarities between the methods employed (e.g., the use of handguns, a dark blue sedan, and face coverings), and the choice of personal acquaintances as victims support the trial court's conclusion that the charges involving Whiting and Puhr are related for purposes of MCR 6.120(B). Cf. *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003) ("Severance was not mandatory in the present case because the shootings occurred within a couple of hours of each other in the same neighborhood, with the same weapon, and were part of a set of events interspersed with target shooting at various outdoor objects."). Severance was not required under MCR 6.120(C).

Moreover, contrary to defendant's claims that evidence relating to the different events would not be admissible at separate trials, the trial court did not err when it concluded that the evidence would be admissible at separate trials under MRE 404(b). Under MRE 404(b), among other proper purposes, other-acts evidence may be offered to prove intent. "When other acts are offered to show intent, logical relevance dictates only that the charged crime and the proffered other acts are of the same general category." *People v VanderVliet*, 444 Mich 52, 79-80; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994) (quotation marks and citation omitted). In this case, for example, defendant claims on appeal that he did not intend to rob Whiting but was instead innocently retrieving property that belonged to others. However, the fact that less than 12 hours later defendant—again accompanied by Boyer, driving a dark sedan, and with his face covered—attempted to rob another acquaintance at gunpoint, again involving a handgun, makes it objectively less probable that defendant acted with innocent intent at Whiting's camper that same morning. See *id*.

Conversely, with regard to the admission of evidence relating to Whiting at a trial relating to Puhr, defendant also asserts on appeal that he has a potential claim of self-defense with respect to the AWIM charges related to the incident involving Puhr. Puhr, in contrast, described an attempted armed robbery, in which he was held at gunpoint and shot when he attempted to escape. The fact that, earlier that same day, defendant also participated in an armed robbery of an acquaintance—similarly acting with Boyer, while driving a dark sedan, and with his face covered—and while armed with a handgun, tends to make it more probable that defendant and Boyer were attempting to rob Puhr at gunpoint that evening, in which case defendant would be ineligible to claim self-defense with respect to the events relating to Puhr. See *People v Minor*, 213 Mich App 682, 686 n 1; 541 NW2d 576 (1995) ("A robber or other wrongdoer engaged in felonious conduct has no privilege of self-defense . . . ."). See also MCL 780.972(1) ("An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual . . . .").

Although the evidence of the separate offenses is prejudicial, it is not unfairly so, and it does not appear that the danger of unfair prejudice substantially outweighed the probative value of the evidence. See MRE 403; see also *People v McGhee*, 268 Mich App 600, 614; 709 NW2d 595 (2005). Further, the trial court expressed a willingness to provide the jury with a limiting instruction regarding the use of the evidence in question. See *McGhee*, 268 Mich App at 614. In short, the trial court did not abuse its discretion by concluding that the evidence would be admissible at separate trials as other-acts evidence, a fact which strongly supports joinder.[8] See *Williams*, 483 Mich at 237.

That the evidence would be admissible as other-acts evidence at separate trials also undermines defendant's claim of prejudice because joinder of charges "cannot prejudice the defendant more than he would have been by the admissibility of the other evidence in a separate trial." *Id*. (quotation marks and citation omitted). Further, the facts regarding the day in question are not particularly complex, meaning that there is little risk of jury confusion. See *Gaines*, 306 Mich App at 305. And, as noted, the trial court expressed a willingness to provide a jury instruction, which would guard against potential prejudice relating to joinder. See *Williams*, 483 Mich at 244.

In addition, the events on September 6, 2020, resulted in interconnected police investigations. Defendant was arrested at his house the following day by a special response team, and it appears that he was interviewed once. In other words, from the available evidence offered thus far, there would be considerable overlap in the police evidence relating to his arrest, the collection of evidence, and his interview with police. Likewise, to the extent that civilian witnesses would need to be called as other-acts witnesses at separate trials, judicial economy weigh in favor of a single trial. In other words, these overlapping proofs and concerns for the convenience of witnesses supports joinder. See MCR 6.120(B)(2); *Williams*, 483 Mich at 237. Overall, the trial court did not err by concluding that the offenses were related within the meaning of MCR 6.120, and on the facts of this case, the trial court did not abuse its discretion by denying defendant's motion to sever the charges. See *Gaines*, 306 Mich App at 304.

## C. CONSTITUTIONAL ISSUES

On appeal, defendant also argues for the first time that the joinder in this case violated, not only MCR 6.120, but also violated defendant's constitutional right to due process and infringed upon his decision whether to testify or remain silent as to each charge. These unpreserved arguments lack merit.

With regard to due process, " '[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it

---

[8] Because a handgun was involved in each offense, evidence related to possession of the gun during each incident that day would also likely be admissible in separate trials. See *People v Hall*, 433 Mich 573, 580-581; 447 NW2d 580 (1989) ("Evidence of a defendant's possession of a weapon of the kind used in the offense with which he is charged is routinely determined by courts to be direct, relevant evidence of his commission of that offense."); *People v Parker*, 76 Mich App 432, 450; 257 NW2d 109 (1977) (recognizing that the source of a weapon was relevant).

results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial.' " *Williams*, 483 Mich at 245, quoting *United States v Lane*, 474 US 438, 446 n 8; 106 S Ct 725; 88 L Ed 2d 814 (1986). As discussed, joinder was not improper on the facts of this case, and joinder will not result in any great danger of unfair prejudice to defendant. See *Williams*, 483 Mich at 237. Defendant's due-process argument lacks merit.

Regarding the effect of joinder on defendant's decision whether to testify, defendant also has not shown error on this basis. Defendant maintains on appeal that he intends to raise a claim of self-defense with regard to the incident involving Puhr, and he contends that he will have to testify regarding this defense because only he can testify about his state of mind. In contrast, defendant asserts that he will defend against the charges involving Whiting on the basis that the property from the camper did not belong to Whiting. According to defendant, there are others who can testify with regard to the ownership of the property in question, meaning that defendant's testimony "would not be necessary to raise his defense" related to Whiting. According to defendant, because he wants to testify about one charge but may wish to remain silent in response to the other charges, severance is required. In support of this argument, defendant cites *United States v Armstrong*, 621 F2d 951, 954 (CA 9, 1980), and *Cross v United States*, 335 F2d 987, 991; 118 US App DC 324 (1964).[9]

In *Cross*, 335 F2d at 989, the Court recognized that prejudice may arise in the context of joinder "when an accused wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place and evidence." The Court reasoned:

> [A defendant's] decision whether to testify will reflect a balancing of several factors with respect to each count: the evidence against him, the availability of defense evidence other than his testimony, the plausibility and substantiality of his testimony, the possible effects of demeanor, impeachment, and cross-examination. But if the two charges are joined for trial, it is not possible for him to weigh these factors separately as to each count. If he testifies on one count, he runs the risk that any adverse effects will influence the jury's consideration of the other count. Thus he bears the risk on both counts, although he may benefit on only one. Moreover, a defendant's silence on one count would be damaging in the face of his express denial of the other. Thus he may be coerced into testifying on the count upon which he wished to remain silent. It is not necessary to decide whether this invades his constitutional right to remain silent, since we think it constitutes prejudice within the meaning of [the federal rule permitting severance]. [*Id*. (footnotes omitted.)]

Factually, *Cross* involved a defendant with a strong defense to one robbery claim—an assertion that "he was a victim and not a cohort of the armed robbers who entered the tourist home behind him." *Id*. at 990. The defendant was ultimately acquitted of this charge. *Id*. In contrast, his testimony regarding a second robbery—that he had been drinking heavily and did not know his whereabouts at the time of the second robbery—"was plainly evasive and unconvincing." *Id*. On these facts, the Court determined that the defendant had been prejudiced by joinder because the

---

[9] Decisions of lower federal courts are not binding on this Court, but they may be considered persuasive. *In re Estate of Vansach*, 324 Mich App 371, 388 n 8; 922 NW2d 136 (2018).

defendant "had ample reason not to testify [related to the second robbery] and would not have done so if that count had been tried separately." *Id*. Joinder thus placed the defendant "under duress to offer dubious testimony on that count," and it "confounded" the defendant in making his defense. *Id*. at 991.

Although *Cross* recognized that joinder can prejudice a defendant who wishes to testify on one count while remaining silent on another charge, *Cross* did not establish a bright-line rule that any cursory assertion of a desire to testify on one count and to remain silent on another count is enough to compel severance of related charges. To the contrary, subsequent decisions have refined the holding in *Cross*, making clear that *Cross* should not be read too broadly. See *Baker v United States*, 401 F2d 958, 976; 131 US App DC 7 (1968). In particular, in *Baker*, the United States Court of Appeals for the District of Columbia Circuit clarified its prior ruling in *Cross* as follows:

> The essence of our ruling in *Cross* was that, because of the unfavorable appearance of testifying on one charge while remaining silent on another, and the consequent pressure to testify as to all or none, the defendant may be confronted with a dilemma: whether, by remaining silent, to lose the benefit of vital testimony on one count, rather than risk the prejudice (as to either or both counts) that would result from testifying on the other. Obviously no such dilemma exists where the balance of risk and advantage in respect of testifying is substantially the same as to each count. Thus unless the 'election' referred to by appellant is to be regarded as conclusive—and we think it should not be—*no need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other*. In making such a showing, it is *essential* that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of 'economy and expedition in judicial administration' against the defendant's interest in having a free choice with respect to testifying. [*Id*. at 976-977 (emphasis added and footnotes omitted).]

In *Armstrong*, 621 F2d at 954, the second decision cited by defendant on appeal, the Ninth Circuit followed the approach in *Baker*, holding that severance is not required unless the defendant makes a convincing showing that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other.

Indeed, since *Baker*, other federal circuit courts have similarly followed this approach, holding that "a mere unexplicated assertion" of the desire to testify on one count, but not a second count, is not enough to require severance. *United States v Werner*, 620 F2d 922, 930 (CA 2, 1980). Instead, under the widely-adopted *Baker* test, severance is only required "when a defendant demonstrates that he has both (1) important testimony to give concerning some counts and (2) a

strong need to refrain from testifying with regard to other counts."[10] *United States v Ely*, 910 F2d 455, 457 (CA 7, 1990). The defendant must make "a convincing showing" in this regard. *United States v Monteiro*, 871 F3d 99, 108 (CA 1, 2017) (quotation marks and citation omitted). Such a showing requires a defendant to make a proffer of what testimony he intends to offer regarding one charge and his reasons for not testifying regarding others; this showing cannot be made on the basis of speculation. See *id*. Moreover, under *Baker*, when addressing the possibility of prejudice and a defendant's reasons not to testify on one count, it must also be considered whether, if the trials were severed, the defendant nevertheless "would have been confronted with substantially the same evidence, because evidence of each of the joined offenses would be admissible in a separate trial for the other." *United States v Weber*, 437 F2d 327, 332 (CA 3, 1970) (quotation marks and citation omitted).

In this case, defendant failed to even raise this *Baker* issue in the trial court, and he certainly failed to make a convincing showing that he has (1) important testimony to give concerning one count and (2) a strong need to refrain from testifying with regard to other counts. He suggests on appeal that he may have a self-defense claim relating to Puhr, but he has made no proffer of his proposed testimony, either in the trial court or on appeal. On the available record, it would be nothing but speculation to suppose that he has important self-defense testimony to offer. Indeed, from the available record, and without a proffer from defendant, it is baffling how defendant could plausibly claim self-defense with regard to the incident involving Puhr. At the same time, defendant also has not adequately explained his reasons for not testifying regarding the incident involving Whiting. He notes on appeal that he intends to defend against the charges relating to Whiting by asserting that the property taken did not belong to Whiting, and he contends that his testimony may not be necessary to support this defense. But he fails to articulate a "strong need" or really any need to refrain from testifying in connection with the charges relating to Whiting.[11] Moreover, given that the evidence of the respective charges would be admissible at separate trials as other-acts evidence, defendant would be confronted with much of the same evidence, even if the charges were severed, which also undermines defendant's speculative claims of prejudice. See

---

[10] Numerous federal circuit courts to have considered the issue has adopted an approach consistent with *Baker*. See *United States v Monteiro*, 871 F3d 99, 108 (CA 1, 2017); *Werner*, 620 F2d at 930; *United States v Reicherter*, 647 F2d 397, 401 (CA 3, 1981); *United States v Goldman*, 750 F2d 1221, 1225 (CA 4, 1984); *United States v Forrest*, 623 F2d 1107, 1115 (CA 5, 1980); *United States v Ely*, 910 F2d 455, 457 (CA 7, 1990); *United States v Jardan*, 552 F2d 216, 220 (CA 8, 1977); *Armstrong*, 621 F2d at 954; *United States v Cox*, 934 F2d 1114, 1120 (CA 10, 1991); *United States v Benz*, 740 F2d 903, 911 (CA 11, 1984). Numerous state courts also follow a similar approach. See 32 ALR 6th 38 (compiling cases).

[11] In passing, defendant generally cites caselaw dealing with "mutually antagonistic" or "irreconcilable" defenses, which typically relates to joinder of codefendants—rather than joinder of charges for a single defendant. See, e.g., *Zafiro v United States*, 506 US 534, 538; 113 S Ct 933; 122 L Ed 2d 317 (1993); *People v Hana*, 447 Mich 325, 347; 524 NW2d 682 (1994), amended 447 Mich 1203 (1994). Defendant fails to explain the relevance of these cases to the facts at hand, and in any event, there is nothing mutually antagonistic or irreconcilable in defendant's contentions that he acted in self-defense during the incident with Puhr and that he cannot be guilty of robbing Whiting because the property did not belong to Whiting.

*Weber*, 437 F2d at 332.  Ultimately, having failed to provide the trial court—or this Court—with a proffer of his self-defense testimony and having otherwise failed to provide adequate information to support his claim of prejudice, he has failed to make the convincing showing required to warrant severance under *Baker*, 401 F2d at 976-977.  Defendant is not entitled to relief on this basis.

Affirmed.


/s/ Jane E. Markey
/s/ Colleen A. O'Brien