*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 14, 2023

Plaintiff-Appellee,

v

No. 359367
Washtenaw Circuit Court

SHAWN DEREK WEBSTER,

LC No. 20-000360-FC

Defendant-Appellant.

Before: GLEICHER, C.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of armed robbery, MCL 750.529, being a felon in possession of a firearm (felon-in-possession), MCL 750.224f(1), being a felon in possession of ammunition (felon-in-possession of ammunition, MCL 750.224f(3), and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve 15 to 20 years' imprisonment for armed robbery and two to five years' imprisonment for each felon-in-possession conviction, to be served concurrently. Defendant was also sentenced to two years' imprisonment for each count of felony-firearm, to be served concurrently to each other and consecutive to the other counts. We affirm.

## I. BACKGROUND

This case arises from three armed robberies committed against Ann Arbor restaurants in 2018 and 2020. The first robbery occurred at a Hungry Howie's pizza shop on August 9, 2018; the second occurred at the Big Ten Burrito (BTB) on August 15, 2018; and the third also occurred at the BTB, the same location as the second, on January 5, 2020. Defendant was charged with numerous counts arising from all three robberies, and, over his objections, the charges arising from all three robberies were adjudicated at the same five-day trial. At the conclusion of the trial, the jury found defendant guilty only of the charges which arose from the 2020 BTB robbery, and he was acquitted of the charges pertaining to the other two robberies. Nonetheless, defendant argues on appeal that he was unfairly prejudiced by the court's refusal to sever the trial.

-1-

The August 9, 2019 Hungry Howie's robbery was described at the trial by Kyle Maurer—the store's manager—and Daryll Hatton—a cook, both of whom were present. There also was surveillance footage of the robbery that was played for the jury. At some point between 10:00 p.m. and midnight, while Maurer was closing the store and Hatton was smoking a cigarette behind the building, a masked man, who was armed with a gun, approached Hatton and pointed the gun in his face. The man entered the building through the back door with Hatton and ordered Maurer to open the safe and give him all of the money. After collecting the money, the man instructed Hatton and Maurer to get on their knees, and after they complied, he left. The August 15, 2018 BTB robbery was described at the trial by Kevin Harleton—a manager at the restaurant—as well as employees Anna Taranto and Aqui Booker. Likewise, this robbery was captured by surveillance footage. At approximately 3:00 a.m., a masked man entered the BTB through the back door, brandishing a gun. He pointed the gun directly at Booker's face while Booker was washing dishes and then took him out to the front area of the restaurant. The gunman then ordered Harleton to open the safe and give him all of the money; after Harleton complied with these demands, the gunman exited through the back door. Maurer, from the Hungry Howie's robbery, was subsequently shown the video of the BTB robbery. After watching the BTB video, Maurer concluded that the BTB robber was the same person as the Hungry Howie's robber because they were wearing the same clothes. Finally, the January 5, 2020 robbery was described at the trial by Scott Lipkowski—a manager—as well as employees Jason White and Teria Moore-Berry. However, there was no surveillance footage of this robbery. At approximately 2:30 a.m., after the BTB had closed, a gunman wearing a camouflage mask entered the BTB through the back door, instructed the employees to get down on the floor, and demanded that Lipkowski open the safe. After removing the money from the safe, the robber left through the back door. After the robber left, White followed him out of the building and saw a gray car speeding away.

Following an investigation, the police concluded that defendant was the perpetrator of all three robberies. Defendant was charged accordingly but acquitted of the charges arising from the first two robberies. This appeal followed.

## II. JOINDER

Defendant argues that the trial court abused its discretion by denying his request to sever all three armed robbery cases for purposes of trial. We decline to review this issue because we conclude that, even assuming arguendo that there was an error, the error was harmless.

MCR 6.120(B)(2) "provides that '[o]n the defendant's motion, the court must sever unrelated offenses for separate trials.' Whether defendant's charges are related is a question of law that we review de novo. The court's ultimate ruling on a motion to sever is reviewed for an abuse of discretion." *People v Girard*, 269 Mich App 15, 17; 709 NW2d 229 (2005). A trial court abuses its discretion by making a decision that falls outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

MCR 6.120(B) provides, in pertinent part:

> On its own initiative, the motion of a party, or the stipulation of all parties . . . the court may join offenses charged in two or more informations or indictments against a single defendant . . . when appropriate to promote fairness to

the parties and a fair determination of the defendant's guilt or innocence of each offense.

> (1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on
>
> (a) the same conduct or transaction, or
>
> (b) a series of connected acts, or
>
> (c) a series of acts constituting parts of a single scheme or plan.
>
> (2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

For the purposes of our analysis, we will assume arguendo that the trial court was compelled by MCR 6.120(C) to sever defendant's trial and erred by failing to do so. Because defendant did not have a constitutional right to have his trial severed, this nonconstitutional error is subject to harmless error review. *People v Williams*, 483 Mich 226, 231, 243; 769 NW2d 605 (2009). "Under MCL 769.26, a preserved, nonconstitutional error is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *Id*. at 243. An error is outcome determinative if it undermined the reliability of the verdict. *People v Feezel*, 486 Mich 184, 203; 783 NW2d 67 (2010). "Similarly, MCR 2.613(A) provides that an error is not grounds for disturbing a judgment 'unless refusal to take this action appears to the court inconsistent with substantial justice.'" *Williams*, 483 Mich at 243. Preserved nonconstitutional errors are presumed to be harmless, and defendant bears the burden of proving that the error resulted in a miscarriage of justice. *People v Hawthorne*, 474 Mich 174, 181; 713 NW2d 724 (2006).

Defendant's discussion is dedicated almost exclusively to whether there was an error, and he hardly addresses whether this alleged error warrants reversal, despite holding the burden to do so.[1] To the extent defendant does argue that this error affected the outcome, he supports this argument with the bare assertion that the failure to sever the charges caused the jury to "arrive at a compromise verdict." The record lends no support to this contention, and defendant makes no offer of proof that could independently support it. Moreover, the court instructed the jury on each offense in this case separately, instructing that the prosecutor must meet the standard of proof beyond a reasonable doubt for each event. Jurors are presumed to follow their instructions, *People*

---

[1] "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). Providing an issue with only "cursory treatment constitutes abandonment of the issue." *Id*. Defendant's abandonment of this issue offers us an alternative basis upon which to affirm his convictions

*v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011), and defendant has not even attempted to overcome this presumption. Finally, while defendant interprets the jury's mixed verdict as proof of a compromise, it is at least equally likely that the jury's decision to acquit defendant of counts arising from two of the three robberies establishes that, despite the joint trial, the jury did in fact assess the three robberies independently of one another.

For these reasons, defendant's argument that he is entitled to a new trial because the trial court did not sever the charges is without merit.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial counsel was ineffective for failing to object to an allegedly sleeping juror and by failing to call defendant's stepbrother as an alibi witness. We disagree.

Claims of ineffective assistance of counsel present mixed questions of fact and law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). Factual findings are reviewed for clear error and legal conclusions are reviewed de novo. *Id*. "To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability exists that the outcome of the proceeding would have been different but for trial counsel's errors." *Head*, 323 Mich App at 539 (quotation marks, citation, and alteration omitted). "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). This Court presumes counsel was effective, and defendant carries a heavy burden to overcome this presumption. *Head*, 323 Mich App at 539.

## A. JUROR MISCONDUCT

Defendant's argument that his trial counsel erred by failing to draw attention to a juror who allegedly fell asleep is without merit because it is not supported by the record.[2]

A criminal defendant has a constitutional right to a fair and impartial jury. US Const, Am VI; Const 1963, art 1, § 20; *People v Miller*, 482 Mich 540, 547; 759 NW2d 850 (2008). A defense attorney's negligent failure to protect this right, if established, would certainly constitute deficient performance in satisfaction of the first prong of an ineffective assistance of counsel claim. See *Head*, 323 Mich App at 539. However, the record does not substantiate that any juror actually fell asleep, and there is no evidence of which juror allegedly was inattentive or asleep, or if so, how long this may have lasted or what testimony may have been missed. Despite defendant's assertion

---

[2] We note that defendant does *not* argue that the trial court committed a plain error by failing to notice and rebuke the juror who allegedly fell asleep; rather, he *only* argues that his trial counsel was ineffective because he failed to draw the court's attention to this juror. Therefore, our analysis is limited to application to the test articulated in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed2d 674 (1984). *People v Randolph*, 502 Mich 1, 18; 917 NW2d 249 (2018). "The standards for 'plain error' review and ineffective assistance of counsel are distinct, and therefore, a defendant can obtain relief for ineffective assistance of counsel even if he or she cannot demonstrate plain error." *People v Hughes*, 506 Mich 512, 523; 958 NW2d 98 (2020).

that he observed a juror fall asleep at trial and that he told his attorney, no such claim was made on the record by any party at trial or in any posttrial motion. Moreover, defendant has failed to make an offer of proof sufficient to persuade us that an evidentiary hearing would expand the record in such a way as to establish this claim of error. The only offer of proof made by defendant was his own affidavit, and only two sentences were dedicated to the juror who purportedly fell asleep: "Throughout my trial, I noticed that one of the jurors was repeatedly falling asleep during the proceedings. Although I raised this issue to my attorney, he did not raise an objection to it with the Court." Aside from this self-serving affidavit that we do not find persuasive, defendant has not referred us to any evidence that could support his claim.

Finally, even if it could be established that a juror fell asleep and defense counsel failed to draw the court's attention to this problem, defendant has failed to establish that there is a reasonable probability that defense counsel's failure to do so affected the outcome of the trial. *See Head*, 323 Mich App at 539.[3] Defendant has provided us with no information regarding how long this juror was asleep or what testimony was missed. Defendant's entire argument in support of the prejudice prong was that a sleeping juror "is unable to exercise the powers of reason and judgment" because the juror "has not heard the evidence, observed the demeanor of witnesses, or appreciated the argument of counsel." However, this Court has squarely rejected the assertion that the existence of a sleeping juror per se satisfies the prejudice prong, *People v Dunigan*, 299 Mich App 579, 586-587; 831 NW2d 243 (2013), and defendant has not offered us any basis upon which to conclude that he was prejudiced in this case.

Therefore, defendant's argument is without merit.

## B. ALIBI WITNESS

Defendant's argument that his trial counsel was ineffective for failing to call his stepbrother, Matthew Adkins, as an alibi witness is likewise without merit.

"Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Traver*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019). When an ineffective-assistance claim is premised on an attorney's failure to call an alibi witness, the defendant must demonstrate that the

---

[3] In general, a new trial should be granted on the basis of juror misconduct only if "the misconduct was such that it affected the impartiality of the jury or disqualified its members from exercising the powers of reason and judgment. *People v Messenger*, 221 Mich App 171, 175; 561 NW2d 463 (1997). However, this standard does not apply here because, to reiterate, the claim of error was framed as ineffective assistance. Therefore, a new trial is appropriate only if there was a reasonable probability that there would have been a different outcome but for counsel's error. See *Hughes*, 506 Mich at 523; see also *People v Jurewicz*, 506 Mich 914; 948 NW2d 448 (2020) (holding that all claims of ineffective assistance of counsel are governed by the *Strickland* test).

witness would have provided favorable alibi testimony. *People v Pickens*, 446 Mich. 298, 327, 521 N.W.2d 797 (1994). Defendant avers that Adkins would have testified that defendant "was babysitting [Adkins's children] all night" on January 5, 2020. Defendant claims that he provided Adkins's name to defense counsel, and it is apparent from the record that counsel was aware of this potential witness.

### 1. *GINTHER* HEARING

On March 20, 2023, we granted[4] defendant's motion to remand for a *Ginther*[5] hearing regarding his ineffective assistance of counsel claim, and on May 30, 2023, a *Ginther* hearing was conducted for the limited purpose of developing defendant's argument that his trial counsel's failure to pursue an alibi defense denied him the effective assistance of counsel.

Matthew Adkins testified that at the time of the third robbery he was living in Ypsilanti with his three children and defendant. At that time, he was employed as a pizza delivery person, and defendant frequently watched the children when Adkins worked. Adkins testified that there was "no doubt" that he "always" worked on Saturdays and that he generally worked until around 3:00 a.m. At the time of the third robbery, Adkins was driving a silver Pontiac Grand Am that originally belonged to defendant, and he was confident that he was using the car to deliver pizzas on the night of the robbery. Less than three weeks after the robbery, Adkins testified during an investigative subpoena that he did not ask defendant to babysit that night, and he would not have known if defendant had left the house while he was at work. Adkins was asked about this testimony at the *Ginther* hearing:

> I—I remember telling him that I—I never specifically said, Shawn, can you watch my kids? It was kind of an unsaid thing. You know? He lived with me. He didn't pay bills. He didn't provide food. And that was kind of just a—a—a—you know, I don't know how to explain it but it was like an unsaid thing. You know? That's how it had always been cause Shawn has never owned his own house. So, when he stayed with me that's what he did. He looked out and watched the kids.

Adkins could not remember whether he ever spoke with defendant's attorney prior to the trial. Adkins also testified that he spoke with his children after he testified for the investigative subpoena and that his children told him that defendant babysat that night.

Defendant testified that Adkins was working the night shift at the time of the robbery, that Adkins needed the car for work, and that defendant was watching Adkins's children. Defendant agreed that Adkins did not formally ask for childcare and that it was simply understood that defendant would watch the children when Adkins was not home. When defendant was not available, childcare was provided by Adkins's mother,[6] who lived next door. Defendant testified

---

[4] *People v Webster*, unpublished order of the Court of Appeals, entered March 20, 2023 (Docket No. 359367).

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[6] Adkins's mother was also defendant's stepmother.

that he was at Adkins's house watching the children on the night of the robbery and recalled having served them a tuna casserole that had been prepared by his grandmother. Defendant testified that he had repeatedly told his trial attorney that he had an alibi the night of the robbery and that Adkins should be contacted, but the attorney never followed this lead. Defendant testified that he talked to his attorney about this alibi after the trial began, but his attorney had not contacted Adkins.

Defendant's trial attorney, Stuart Collins, testified that he was told about Matthew Adkins "later almost towards the eve of trial" and that he had "some vague recollections about" defendant alleging to have provided Adkins with childcare. However, Collins emphatically denied having ever been told that Adkins was in possession of defendant's car at the time of the crime. Collins further testified that he had no memory of defendant ever saying that he was babysitting on the night of the robbery. Collins could not say "with absolute certainty" that defendant did not tell him about this alibi, but there were "a great deal of things that [he] remember[ed] about this case with absolute certainty" and this was not one of them." Collins testified that he did speak with Adkins, but Adkins refused to testify because defendant owed Adkins money. Collins told defendant that he could subpoena Adkins, but Collins did not think it would be worthwhile "to have someone who is an adverse witness who doesn't want to be there when he claims that [defendant owes him] money." Moreover, Collins had not been told that Adkins could serve as an alibi witness. According to Collins, the purpose for his call with Adkins was to see if he could identify a tattoo that defendant had for the purposes of a separate case involving and unarmed robbery. Collins described Adkins as "somewhat hostile" and testified that Adkins "clearly did not want to be talked to." Collins described his strategy at trial as "sort of a moving target" because defendant "didn't have a cohesive theory other than he wasn't there and he didn't do it," and Collins had no recollection of there being a solid alibi defense for him to pursue. Collins testified that defendant was "fixated on" the tattoo and would "bring it up at every single meeting" despite being reminded that the unarmed robbery case was less serious than the three armed robbery charges. Defendant seemed to believe that proving the police were lying about the unarmed robbery would cause the jury to doubt their credibility with respect to the armed robberies.

On May 30, 2023, the trial court entered an opinion and order denying defendant's motion for a new trial and concluding the remand. The trial court did believe that, with the benefit of hindsight, defense counsel could have investigated an alibi defense further:

> In hindsight, Trial Counsel could have investigated other potential witnesses regarding Defendant-Appellant's alibi defense. For example, Trial Counsel could have talked to Mr. Adkins' [sic] older children, who were fourteen and thirteen years old at the time, about whether Defendant-Appellant was babysitting them during the time in question. Trial Counsel also could have talked to Mr. Adkins' [sic] mother as to whether she saw Defendant-Appellant during this time since she lived next door to Mr. Adkins and one of the children was allegedly at her home when Defendant-Appellant was babysitting the children.

Nevertheless, the court concluded that the information defense counsel had at the time justified his decision that an alibi defense "was not an appropriate strategy to adopt" with this case. The court reasoned that Adkins's testimony at the investigative subpoena hearing did not support defendant's alibi defense and that defense counsel testified at the *Ginther* hearing that Adkins would likely have been a hostile witness. Given the presumption that the choice of what evidence to present

and which witnesses to call is a valid exercise of trial strategy, the court concluded that defendant could not establish ineffective assistance.

## 2. ANALYSIS

Defendant has not demonstrated that trial counsel was ineffective for failing to call Adkins as a witness.

At the outset, we note that the trial court erred by citing outdated caselaw regarding trial counsel's duty to "present all substantial defenses." Previous jurisprudence of this Court mandated that an ineffective assistance of counsel claim premised on the failure to present evidence could prevail only if the defendant established the deprivation of a "substantial defense," and "substantial alibi defense would be one in which defendant's proposed alibi witnesses verified his version." *People v Kelly*, 186 Mich App 524, 526-527; 465 NW2d 569 (1990). However, this is no longer valid law, as our Supreme Court explained:

> The Court of Appeals erred in holding that the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense. The defendant was not required to show, in order to obtain relief for ineffective assistance of counsel, that trial counsel's failure to call witnesses deprived him of a substantial defense. Rather, a claim of ineffective assistance of counsel premised on the failure to call witnesses is analyzed under the same standard as all other claims of ineffective assistance of counsel, i.e., a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. [*People v Jurewicz*, 506 Mich 914; 948 NW2d 448 (2020).]

This error does not warrant another remand for additional fact-finding because the court used the correct standards with respect to its factual findings, and the record and findings are sufficient for us to conclude on de novo review that defendant has not established ineffective assistance.

The evidence from the *Ginther* hearing, viewed in conjunction with the evidence from the investigative subpoena hearing, established that defendant cannot overcome the presumption that defense counsel's decision not to pursue an alibi defense was a reasonable exercise of trial strategy. First, Adkins testified at the investigative subpoena hearing, specifically stated that he had not asked defendant to babysit, and did not offer any sort of useful alibi testimony. Adkins testified at the *Ginther* hearing that he did not ask defendant to babysit because they had an unspoken arrangement, but this seems to contradict his testimony at the investigative subpoena hearing that he preferred defendant not babysit because he had a tendency to yell at the children. Moreover, Adkins specifically testified at the investigative subpoena hearing that he would not have known if defendant was home with the children while he was at work. Therefore, if Adkins had offered an alibi at trial then this testimony would have been heavily impeachable. Further, defense counsel had no recollection of defendant pushing for an alibi defense, and he testified that Adkins was unwilling to help with the defense because defendant owed him money. At the *Ginther* hearing, defendant testified that he insisted that his attorney pursue an alibi defense, and Adkins denied having spoken with defense counsel or having suggested that defendant owed him money.

However, the trial court clearly viewed Collins as more credible than Adkins and defendant, and this Court defers to the trial court on matters of credibility. See *People v White*, 331 Mich App 144, 150; 951 NW2d 106 (2020).

In conclusion, defendant has not established that defense counsel's failure to pursue an alibi defense constituted ineffective assistance.

## IV. SPEEDY TRIAL

Defendant argues that he was denied his statutory and constitutional right to a speedy trial. We disagree.

Evaluation of this claim of error requires interpretation and application of statutes and court rules. We review de novo the interpretation and application of statutes and court rules. *People v Kimble*, 470 Mich 305, 308-309; 684 NW2d 6696 (2004). Questions of constitutional law are likewise reviewed de novo. *People v Gilmore*, 222 Mich App 442, 459; 564 NW2d 158 (1997). The trial court's factual findings are reviewed for clear error. *Id*.

## A. 180-DAY RULE

Defendant's argument that the trial court violated the 180-Day Rule is without merit.

The requirements of the 180-day rule are set forth in MCL 780.131(1), which provides in relevant part:

> Whenever the department of corrections receives notice that there is pending in this state any untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility of this state a criminal offense for which a prison sentence might be imposed upon conviction, the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint. . . .

MCL 780.133, which governs the failure to comply with the 180-day rule, provides:

> In the event that, within the time limitation set forth in [MCL 780.131(1)], action is not commenced on the matter for which request for disposition was made, no court of this state shall any longer have jurisdiction thereof, nor shall the untried warrant, indictment, information or complaint be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Defendant appears to have wholly misinterpreted the 180-day rule; as the Supreme Court aptly put in *People v Lown*, 488 Mich 242, 246; 794 NW2d 9 (2011), "[t]he object of this rule is to dispose of new criminal charges against inmates in Michigan correctional facilities." "Thus, the statute applies only to those defendants who, at the time of trial, are currently serving in one of our state

penal institutions, and not to individuals awaiting trial in a county jail." *People v McLaughlin*, 258 Mich App 635, 643; 672 NW2d 860 (2003). Therefore, defendant's argument that the 180-day rule was violated is without merit.

Defendant asserts that the delay in initiating his trial also violated MCR 6.004(C), which provides, in relevant part:

> In a felony case in which the defendant has been incarcerated for a period of 180 days or more . . . the defendant must be released on personal recognizance, unless the court finds by clear and convincing evidence that the defendant is likely either to fail to appear for future proceedings or to present a danger to any other person or the community.

Defendant refers to MCR 6.004(C) as another codification of the 180-day rule, but this is not true; the 180-day rule is codified in the court rules by MCR 6.004(D),[7] not MCR 6.004(C). See *People v Williams*, 475 Mich 245, 257; 716 NW2d 208 (2006). The court rule cited by defendant generally requires that a defendant be released on personal recognizance if the defendant has been held for more than 180 days pending trial, but unlike MCR 6.004(D)(2) and MCL 780.133, nothing in MCR 6.004(C) suggests that a violation of this rule divests the court of its jurisdiction. Defendant cites no authority, and we know of none, supporting the proposition that the failure to grant pretrial release as is mandated by this rule requires any sort of postconviction remedy, let alone reversal of a conviction.[8] We therefore decline to review the merits of defendant's argument that MCR 6.004(C) was violated.

In conclusion, defendant's arguments that his rights under the 180-day rule were violated are without merit.

### B. CONSTITUTIONAL RIGHT TO SPEEDY TRIAL

Defendant argues that the trial court violated his constitutional right to a speedy trial. We disagree.

The United States and Michigan Constitutions guarantee criminal defendants the right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20; *People v Patton*, 285 Mich App 229, 235 n 4; 775 NW2d 610 (2009). "In determining whether a defendant has been denied a speedy trial, four factors must be balanced: (1) the length of the delay, (2) the reasons for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) prejudice to the defendant from the delay."

---

[7] This court rule mirrors the statutory 180-day rule and requires dismissal of an action that is not commenced within 180 days of receipt of the required notice from the MDOC.

[8] "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). Providing an issue with only "cursory treatment constitutes abandonment of the issue." *Id*.

*People v Mackle*, 241 Mich App 583, 602; 617 NW2d 339 (2000) (citations omitted). The delay period commences at the arrest of the defendant. *Williams*, 475 Mich at 261. In this case, defendant was arrested and jailed on January 24, 2020, and trial began approximately 20 months later on September 27, 2021. "A delay of more than eighteen months is presumed to be prejudicial and the burden is on the prosecution to prove lack of prejudice." *People v Simpson*, 207 Mich App 560, 563; 526 NW2d 33 (1994). "Although the length of delay in this case is considerable, there is no set number of days between a defendant's arrest and trial that is determinative of a speedy trial claim." *Waclawski*, 286 Mich App at 665. Thus, we must review the remaining factors.

The second factor requires consideration of the cause of the delays. In assessing the reasons for the delay, the Court must examine to whom the delay is attributable. When a defendant requests an adjournment, the delay is attributable to the defendant. *People v Cain*, 238 Mich App 95, 113; 605 NW2d 28 (1999). The prosecutor is held accountable for unexplained or otherwise unattributable delays. *Lown*, 488 Mich at 261. Despite defendant's conclusory assertion that the delays were unexplained, the trial court examined the procedural history of the case and found that defendant was responsible for most of the delay. The record shows that the defense made several request for adjournments related to, *inter alia*, reviewing discovery, filing motions, and preferring not to participate in Zoom hearings during the pandemic. Overall, the record shows that the prosecution appeared to be ready to proceed. Further, there were additional delays related to the COVID-19 pandemic, including delaying trial until it could be held in-person and defense counsel's request for an adjournment of a pretrial hearing because he was unable to meet with defendant when his cell block was under quarantine. The trial court did not appear to hold this delay against the prosecution, as defendant sought. Delays and docket congestion are inherent in the court system, and, even if they are " 'technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial.' " *Gilmore*, 222 Mich App at 460 (citation omitted). In this case, the trial court could not fairly hold the prosecution responsible for the docket congestion and delays caused by COVID-19 safety protocols. In sum, the record supports the trial court's apparent finding that the substantial delay was mostly attributable to the defense, or to an exceptional matter, COVID-19, that was not attributable to either party. Although there were reasons for additional delays, those periods were not significant. Under these circumstances, this factor weighs against defendant.

With respect to the third factor, the assertion of the speedy-trial right, this Court looks at when defendant asserted the right and when trial took place in relation to the assertion. See *Cain*, 238 Mich App at 113-114. Although defendant first asserted his right on November 25, 2020, and trial was not held until September 27, 2021, subsequent delays were caused by the defense's requests for adjournments to review discovery, file motions, and the COVID-19 pandemic protocol. Therefore, we give little weight to defendant's initial assertion of his right to a speedy trial.

With regard to the fourth factor, there are two types of prejudice: prejudice to the person and prejudice to the defense. *Gilmore*, 222 Mich App at 461-462. The latter prejudice is the more crucial in assessing a speedy-trial claim. *Williams*, 475 Mich at 264. Defendant does not argue that his incarceration during the delay prejudiced his person. *Gilmore*, 222 Mich App at 462 (prejudice to the person consists of the deprivation of a defendant's civil liberties). Indeed, defendant makes no argument at all on appeal regarding prejudice. Further, there is no indication that the delay adversely affected defendant's ability to defend the charges. In fact, much of the

delay, requested by the defense, was for the specific purpose of preparing the defense's case. Notably, defendant has not identified any specific beneficial testimony or evidence that was lost because of the delay.

After balancing the relevant factors, we conclude that defendant's right to a speedy trial was not violated.

## V. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecution failed to present sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that it was he who committed the January 5, 2020 robbery of the BTB store. We disagree.

We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Defendant does not challenge any of the elements specific to armed robbery, only the sufficiency of the evidence to support his identity as the robber. "[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Positive identification by a witness or circumstantial evidence and reasonable inferences arising from it may be sufficient to support a conviction of a crime. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000); see also *Nowack*, 462 Mich at 400. The credibility of identification testimony is for the trier of fact to resolve, and this Court will not resolve it anew. *Davis*, 241 Mich App at 700.

Lipkowski—the BTB manager—unequivocally identified defendant at trial as the person who robbed the store on January 5, 2020. The witness explained that he got a good look at the robber, could see part of the robber's face, could see through the mesh portion of the mask, and could identify the half-masked defendant by his eyes, eyebrows, complexion, and other visible portions of his face. This testimony alone was sufficient to establish defendant's identity as the perpetrator beyond a reasonable doubt. See *Davis*, 241 Mich App at 700. Apart from the manager's positive and unequivocal identification of defendant, the prosecution presented additional circumstantial evidence supporting defendant's identity. All three employee-eyewitnesses described the robber as wearing a very unique camouflage and mesh half-mask, and the police recovered a camouflage mask from defendant's residence, which all three eyewitnesses testified that the mask matched the one that the robber was wearing. The eyewitnesses also described the robber's gun as being black and silver, and a gun matching this description was retrieved from defendant's nephew, who testified that defendant gave him the gun to hold. Additionally, the nephew testified that on January 5, 2020, at 1:36 a.m., he received a text message from defendant in relation to the gun, which stated: "[I] need[] it. I got something set up that I've done before already. Going to make a repeat of it." Soon thereafter, defendant retrieved the gun

from his nephew, and later that morning, defendant returned the gun and "flashed" some money. The jury could reasonably infer from this evidence that the robbery, which occurred at approximately 2:30 a.m., was committed after defendant picked up the gun and before he returned it while possessing cash. In addition, an employee observed a small silver car fleeing the scene, and the police later saw defendant in a car matching the description of this getaway car, which belonged to defendant's stepbrother.

This evidence, viewed in a light most favorable to the prosecution, was sufficient to establish defendant's identity as the robber.[9]

## VI. SENTENCING

Defendant raises two challenges to his sentencing proceedings, both of which are without merit.

## A. OV 9

Defendant challenges the trial court's assessment of 10 points for OV 9, arguing that the evidence did not support a finding that more than one victim was put in danger. We disagree.

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

OV 9 addresses the number of victims, MCL 777.39(1), and the assessment of 10 points is appropriate if "[t]here were 2 to 9 victims who were placed in danger of physical injury or death[.]" MCL 777.39(1)(c). Each person placed in danger of injury or death during the commission of the sentencing offense is considered a "victim" for purposes of scoring OV 9, and zero points are to be assessed if there was only one victim. *People v Gullett*, 277 Mich App 214, 217; 744 NW2d 200 (2007). "A person may be a victim under OV 9 even if he or she did not suffer actual harm; a close proximity to a physically threatening situation may suffice to count the person as a victim." *People v Gratsch*, 299 Mich App 604, 624; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013).

The facts provided a reasonable basis for the trial court to find that there were three victims who were placed in danger of physical injury or death. It is undisputed that three employees were

---

[9] Defendant argues that the identification testimony was not reliable, emphasizing the discrepancies in the eyewitnesses' description of the robber, that there was no DNA or fingerprint evidence linking him to the robbery, that his nephew's testimony was not credible, and that there was no evidence that the clothing items found in his house were actually worn on January 5, 2020. Defendant's challenges are related to the weight of the evidence rather than its sufficiency, and this Court "will not interfere with the jury's determinations regarding weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

inside the store, which multiple witnesses described as being "very small," when the gunman entered the store and committed the robbery. There was evidence that the three employees were "right next to each other" when defendant entered the store with his gun drawn and that defendant was approximately three to eight feet away from all three employees throughout the robbery. Contrary to defendant's argument, the fact that the robber's attention was focused primarily on the manager is irrelevant. Our Supreme Court has noted that "in a robbery, the defendant may have robbed only one victim, but scoring OV 9 for multiple victims may nevertheless be appropriate if there were other individuals present at the scene of the robbery who were placed in danger of injury or loss of life." *People v Sargent*, 481 Mich 346, 350-351 n 2; 750 NW2d 161 (2008). Furthermore, there was evidence that before focusing his attention on the manager, defendant had already pointed his gun at all three employees upon entering the store and, while brandishing the gun, directed all of the employees to get on the floor and raise their hands, an order with which they all complied. Therefore, the trial court did not clearly err by finding that the evidence supported a 10-point score for OV 9. *Hardy*, 494 Mich at 438.

## B. IMPROPER SENTENCING CONSIDERATION

Defendant argues that the trial court improperly punished him by imposing a more severe sentence for exercising his right to a jury trial. We disagree.

Because defendant did not object to the trial court's comments or otherwise raise this issue in the trial court, this issue is unpreserved, and we review defendant's unpreserved constitutional claim for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 762-763; 597 NW2d 130 (1999). "A sentencing court cannot base its sentence on a defendant's decision to exercise his constitutional right to a jury trial." *People v Brown*, 294 Mich App 377, 389; 811 NW2d 531 (2011). However, it is not per se unconstitutional when a defendant receives a higher sentence following a trial than he would have received from a plea. *Id*. Defendant's argument is based on the following statements made by the trial judge prior to imposing defendant's sentence:

> And what I have noted over the years is that at least on some occasions it would appear as though the sentence that imposed [sic] is imposed on individuals more stringently or higher because they went to trial.

> I don't believe that has anything to do with any wrongdoing on anybody's part. What it is specifically indicative of having seen the trial. It's entirely different for somebody to come in front of me, I'll speak about myself since someone that I can, that comes before me and goes to trial and then I sit through five days of testimony listening often times [to] pretty graphic and/or awful detail. Nonetheless, it's my responsibility to do it.

> And, in fact, the sentence that gets imposed is higher or perhaps seems higher with respect to a case in which I listened to a plea agreement placed on the record. There's just so much additional information.

And, in fact, more often than not reflecting on the individuals who have been harmed by way of being victims or the like and that therefore is kind of a natural circumstance to enter such a sentence.

Again, it's not something that's problematic. It's not something that doesn't occur, but I've said this in the past, because it's going to occur here.

The question for the Court becomes having the jury having made their determination what is an appropriate sentence taking into account all of the factors.

And having done that, the Court comes to the following conclusion. . . .

At the outset, we emphasize that the standard of review for this issue, as it is unpreserved, is plain error. An error that is "clear or obvious" is a plain error. *Carines*, 460 Mich at 763. "A 'clear or obvious' error under the second prong is one that is not subject to reasonable dispute." *Randolph*, 502 Mich at 10 (quotation marks and citation omitted). We do question the wisdom of the court's decision to engage in this discussion of the impact that a defendant's decision to have a trial tends to have on the defendant's sentence. However, it is neither clear nor obvious to us that the court punished defendant for exercising his constitutional right to a jury trial. *Carines*, 460 Mich at 763; *Randolph*, 502 Mich at 10. As noted, a plain error "is one that is not subject to reasonable dispute." *Randolph*, 502 Mich at 10 (quotation marks and citation omitted). One could reasonably interpret the trial court's statements as reflecting its observation that the several days of trial testimony provided it with more information about the offense than it would have had if defendant had pleaded guilty and a factual record had not been developed. Indeed, the court explained that "having seen the trial . . . [t]here's just so much additional information. And, in fact . . . reflecting on the individuals who have been harmed . . . is kind of a natural circumstance to enter such a sentence."

The court had significant evidence available to it at sentencing that would not have been available if defendant had entered a plea, including the victims' testimony and the testimony of defendant's teenage nephew, whom defendant asked to hold a gun. The court heard testimony from three victims who all described being traumatized by the robbery. If defendant had accepted a plea agreement, the court would likely have based its sentence primarily on the presentence investigation report as well as the colloquy offered by defendant at his plea hearing. Taking time to acknowledge the reality that the court had greater exposure to the impact of defendant's crime as a result of sitting through a five-day trial is not the same as punishing the defendant for deciding to conduct said trial. The fact that the trial court imposed a minimum sentence of 180 months, which was nearer the low end of defendant's guidelines range of 126 to 480 months, further undermines defendant's argument that court punished him by imposing a mere severe sentence for exercising his right to a jury trial. The record simply does not establish plain error with respect to the trial court's purported imposition of a harsher sentence to punish defendant for exercising his right to a jury trial. Therefore, we reject this claim of error.

## VII. CONCLUSION

The trial court did not abuse its discretion by declining defendant's request to sever his trial. Defendant has not established a valid claim of ineffective assistance of counsel. Defendant's

right to a speedy trial was not violated because the delay was caused primarily by his own requests for adjournments. The prosecution presented sufficient evidence for a jury to identify defendant as the robber. OV 9 was properly scored because three people were endangered by the robbery. Finally, defendant has failed to establish plain error with respect to his allegation that the trial court punished him for exercising his right to a jury trial.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado